GkeeN, Judge,
delivered the opinion of the court:
Notwithstanding the case has been tried and submitted on the facts, the defendant has filed a motion to dismiss the petition on the ground that it is based upon an alleged breach of the contract occurring more than six years prior to the time when the action was commenced.
While the petition does allege that in several respects the defendant failed to comply with the contract and that these specific failures occurred more than six years prior to the time when the suit was commenced, less than six years elapsed between the time when the contract was completed and this suit was begun.. If the contention of defendant that plaintiffs’ right of action accrued at the time when the defendant, in the course of work upon the contract, failed *356 to comply with its provisions is sustained, then, as said in Myerle v. United States, 31 C. Cls. 105—
* * * any contractor with the Government must, to protect his right, sue upon every item of difference of fact and- every item of difference of interpretation of the contract as each detail of his work is undertaken or completed, as the case may be.
And on every occasion when the Government fails to act in accordance with the contract, the contractor must “forthwith begin the prosecution of his remedy against the Government.”
The holding in the case last cited was adverse to this rule. We think the contractor is not obliged to sue on each item of damage as it arises and that his claim in full does not accrue until the completion of the work called for in the contract, if the contract is completed.
The motion to dismiss must be overruled and the case determined upon the facts and the law applicable thereto..
This action is brought upon an alleged breach of a contract entered into between the plaintiffs and the United States in July 1926. The contract provided for the construe; tion of a pioneer highway for a distance of nine miles up and through an extremely rough section of Mt. Rainier National Park. The work required included clearing, grubbing, excavating, and surfacing, the excavating being the major item of the contract. Plaintiffs entered upon the performance of the contract in August 1926. So much preliminary work was necessary that of the work to be performed under the contract only about $10,000 in value v/as done in 1926. In 1927, work of the value of $101,000 was completed. This was less than should have been accomplished in the time which had elapsed in order to complete the work within the time originally fixed. In the latter part of 1927, defendant’s representatives became apprehensive that the work would not be completed on time and urged that it be expedited, and in January 1928 plaintiffs held a conference with defendant’s representatives follow*-ing which plaintiffs submitted a plan of operation on January 12 which was considered sufficient by defendant’s representatives if maintained. Thereafter the plaintiffs ex *357 pedited the work in many ways and the total value of work completed by October 20 was $237,633.44. At this rate it would have been possible for the plaintiffs to complete all the work provided by the contract, with minor exceptions, before January 1, 1929, if the-work had not been suspended on or about October 8,1928.
During 1928 work under existing contracts of the defendant for road building progressed more rapidly and required a greater expenditure of funds than had been anticipated by the defendant with the result that by the latter part of September 1928 it became known to defendant that funds for road building purposes of the character being carried on by plaintiffs were practically exhausted. Accordingly, on October 1, 1928, the defendant advised its representatives in charge of the work to be done by plaintiffs and others that—
Park service has barely sufficient cash to meet September obligations. Additional cash not available until Congress acts probably January earliest. Order all contractors to shut down. Only alternative is for contractors to finance themselves on basis of certified monthly estimates. Canvass contractors and wire' results in each case.
October 4,1928, plaintiffs’ and defendant’s representatives had a conference in which the plaintiffs were told that they would have the option of either suspending operations until further funds were appropriated by Congress or accepting certified estimates on the work as completed and financing themselves until a further appropriation was made. Thereupon the plaintiffs advised defendant’s representatives they would not undertake further work except for cleaning up odds and ends and would shut down operations about October 15, 1928, which decision was carried out. October 8, 1928, defendant’s representative formally authorized the plaintiffs to suspend work. Subsequently by several extensions additional time was allowed for the completion of the contract so that when it was finished on November 20, 1929, no amount was withheld as liquidated damages. Plaintiffs resumed operations about June 21, 1929, and completed the contract as above stated.
*358 The record in the case is very long and the evidence voluminous but there is little dispute with reference to the facts in the case and only one question of law involved. Counsel for both parties commend the findings of the commissioner of this court, and the exceptions taken by the respective counsel are few in number. After examining the testimony and- the documentary evidence offered in the case, we have concluded that no change should be made in the commissioner’s findings.
The plaintiffs object specially to that part of Finding 14 which holds the record is insufficient to substantiate plaintiffs’ claim that the defendant has not paid in ivhole or in part for two items of damages, set up by plaintiffs relating to expenditures made in removing branches of trees blown down or fallen across or into the roadbed during the “extra” winter, and “cost of removing the bank ravellings caused by the snpw and frost of the winter” and related work.
While the evidence is sufficient to show the amount of work and expense incurred by plaintiffs in relation to these two matters, we agree with our commissioner that the evidence fails to show that the plaintiffs have not received payment therefor. The evidence shows that the plaintiffs expended on these items the amount claimed but there is no direct testimony that they have not received payment hi the many partial payments made thereafter. The plaintiffs contend that this is shown by the statement of certified monthly estimates offered in evidence, but, in our opinion, these statements are so indefinite that no conclusion can be reached therefrom with reference to this matter.
The defendant especially objects to the finding of the commissioner that the reasonable rental value of plaintiffs’ equipment during the period it was not in use by reason of the suspension order was $34,500. It is true that the nature of the claim upon which the allowance was based is such that the amount thereof cannot be estimated exactly but this does not prevent the plaintiffs from recovering under the circumstances of the case. The commissioner found that the amount above stated was the rental value “for the portion of that period when such equipment could reasonably have been rented.” Transposing this statement, *359 it is in effect a finding that the equipment could have, been rented for a portion of the period during which it was idle and its reasonable rental value for such period was the value stated in the findings. On behalf of the plaintiffs it is urged that as evidence was produced without contradiction to support the amount of $52,800 claimed, the full amount should have been allowed. But the testimony given was in the nature of opinion evidence which the court was not obliged to accept to its full .extent -if, ..on the whole, the circumstances of the case did not warrant it. We think the several amounts given by plaintiffs’ witnesses which made up the item were in some respects unreasonably large and that the commissioner correctly determined a reasonable rental allowance from all the evidence.
Counsel for the respective parties agree that the only issue of law is whether the notice by defendant to the plaintiffs to suspend work because of lack of funds with which to continue performance constituted a breach of the contract.
In connection with this question of law, one matter of evidence is argued by the defendant. It relates to the’ testimony of Joplin, a member of the partnership constituting the plaintiffs. The defendant offered testimony tending to show that Joplin did not make any objection to the suspension of the contract, and it is contended that the failure to produce Joplin in rebuttal of this testimony constituted a presumption against plaintiffs that Joplin, if produced as a witness would be unable to deny the testimony offered by defendant on this point. But the testimony showed that Joplin was ill and unable to attend the trial which is sufficient to rebut the presumption. Moreover, we think that under all the circumstances of the case even if the plaintiffs did fail to make any protest against the order suspending the work this fact would not show acquiescence therein.
The legal issue between plaintiffs and defendant involves the question of whether the plaintiffs were bound to know the condition of the appropriation account of the Treasury.
The general rule is that persons contracting with the Government to perform work under general appropriations are not bound to know the condition of the appropriation
*360 account of the Treasury or the contract book of the department. See Schuler & McDonald v. United States, 85 C. Cls. 631, 643, and Myerle v. United States, supra. And where the Government had failed to carry out its part of the contract the plaintiff, having suffered damage as a result thereof, is entitled to recover the amount of damages proved. In the case before us it is contended, however, that as the advertisement for bids stated—
The Secretary has programmed $429,500.00 for the work on this project, $64,000.00 of which is cash immediately available and $365,500 is funds authorized against which contractual obligations can be incurred, ■
the rule set out above does not apply.
Whatever the Secretary’s program may have been, it was subject to change and we think the plaintiffs had the right to expect it would conform to the provisions of written contracts made which had been duly authorized by statute. We have shown in the statement of the case that plaintiffs did not proceed with any undue haste in performing the contract. Only about $10,000 in value was done in 1926, and in 1927 the work amounted to about $101,000, which was less than should have been accomplished in order to complete the work within the time fixed. The result was, as stated in the first part of the opinion, that defendant’s representatives urged that it be expedited and the total value of the work completed by October 20, 1928, was $237,633.44 which was. much less than the amount authorized against which contractual obligations could be incurred as stated in the call for bids.
The project included in the Joplin and Eldon contract was only a part of a large program of the Government providing for the construction of roads and trails in national parks. No question is raised as to the authority of the Government officials to make the contract under which suit was brought. The defendant contends that the payments under it were only to be made “subject to funds stipulations in notice to contractors,” as stated in the contract. The only notice plaintiffs received was that the Secretary, at the time the contract was made, had “programmed” the use of a certain amount of funds. Obviously, however, the Secretary *361 could change this program at any time and the amount of the appropriations which was under the control of the Secretary could be increased by the action of a subsequent Congress. Before the work had been suspended for want of funds the first session of the Seventieth Congress lasting from December 5, 1927, to May 29, 1928, had convened and adjourned after appropriating several millions of dollars for roads and trails in connection with the national parks. Whether any of this sum could have been used in the discretion of the Secretary on the particular project under consideration, the record does not show. At all events, the plaintiffs had no reason to expect' that Congress would adjourn without appropriating the money to finish duly authorized contracts on which large sums had been already expended, especially as plaintiffs had been paid several times the amount of cash named in the so-called program and had been urged to expedite the work in order to complete it according to the contract. Up to the time when notice was received to discontinue the work, the plaintiffs were subject to a heavy penalty in the form of liquidated damages if they failed to complete the work within the period fixed by the contract. The provision making the plaintiffs subject to such damages is inconsistent with the statement in the advertisement for bids upon which defendant relies. Considering all the circumstances of the case, we think the plaintiffs were not bound to keep watch upon the appropriations made by Congress and the program of the Secretary which apportioned the sum so appropriated.
The defendant on October 1, 1928, advised its representative in charge of the work that the park service had barely sufficient cash to meet September obligations and to “order all contractors to shut down,” and the attention of the plaintiffs was called to this direction. Thereafter, the plaintiffs were given the option of suspending operations or financing themselves until money should become available through a further appropriation. The plaintiffs then declined to proceed further and were authorized to suspend work. We think under all the evidence this constituted a breach of the contract on the part of the defendant.
The findings show that the plaintiffs sustained damage in the amount of $2,545.54 in moving their equipment to a *362 lower level where it would not be buried by the heavy winter snows and otherwise protecting and storing it; that the expense incurred in drying out damaged supplies and equipment and preparing for resuming operations in 1929 was $1,236.31; and that the reasonable rental value of such equipment for the portion of the time when work was suspended during which the equipment could have been rented was $34,500. Plaintiffs are entitled to recover the sum of these three 4tems,i.-$38,280;85, -and judgment will .be rendered accordingly.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.
SUPPLEMENTAL OPINION ON MOTION TO DISMISS AND POE A
NEW TRIAL
Green, Judge,
delivered the opinion of the court:
Counsel for defendant strenuously contend that the court erred in . not sustaining their motion to dismiss plaintiffs’ action as barred by the statute of limitations. It is. argued that plaintiffs’ case is based upon an alleged breach of the contract between the parties and that if this breach occurred at all it took place more than six years prior to the time when suit was begun, which was one day within six years from the time the contract was completed and more than six years from the time when the acts complained of occurred.
The evidence shows that the-representatives of the defendant, about October 8, 1928, .in effect, directed the plaintiffs to cease operations until further notice [see Findings 12 and 13], unless they were willing to finance the work themselves. In the opinion heretofore filed it was stated that this constituted a breach of the contract on the part of the defendant. This statement was too broad for the reason that the action of the defendant violated none of the express provisions of the contract. This is not a case where payments under, the provisions of the contract had become due and the defendant had failed to make them. *363 Under the contract, payments were due as work was performed and estimates made. On completion of the contract a final amount became due for the work and claims in connection therewith, but nothing was due on • these claims until the work was finished and the contract completed. When the defendant announced that it would stop making payments in accordance with the terms of the contract, the plaintiffs could have abandoned the project and sued on a quantum meruit for the work done and for damages. We do not have that kind of a case here. Instead the plaintiffs elected to proceed under the contract when permission was given to resume the work, but they could not obtain the final payment until it was finished, for the amount finally due the plaintiffs under the contract depended on its completion. When the defendant directed the work to be suspended until further notice, it delayed the completion of the contract if plaintiffs still elected (as they did) to proceed with the work when permitted, but if plaintiffs had abandoned the contract the delay would have been immaterial and no cause of action on account of damages for delay would have arisen. When plaintiffs continued to work under the contract, all of plaintiffs’ claims were bound up with the completion of the project in accordance with its terms and this, we think, fixed the time when plaintiffs’ cause of action arose.
As sustaining our former opinion, we cited the case of Myerle v. United States, 31 C. Cls. 105, 134. The general rule adopted by this court is that under a contract to perform work the completion thereof and its acceptance are what start the statute to run. Pink, Liquidator, v. United States, 85 C. Cls. 121, 124. And we have treated this rule as applicable to claims for delay. Our conclusion is that the former ruling on the motion to dismiss must be adhered to.
Another contention specially urged by counsel for defendant is that the plaintiffs cannot recover the rental value of their equipment for the period it was not in use, as shown by Finding 16, for the reason that the eA-idence fails to show that plaintiffs made any effort to lease the equipment to' other parties and thus reduce the damage. It is a suffi *364 cient answer to this contention that defendant only directed the stoppage of the work until further notice and it was therefore impossible for the plaintiffs to make a lease for any definite time. Besides this, it appears that the equipment was located at a high altitude-and that-there was lack of demand for it in the winter season. The circumstances are quite sufficient to show that it would have been impracticable for the plaintiffs to let the equipment out for any substantial sum.
The motion for new trial must be overruled and it is so ordered.
Williams, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in this decision.