**HOLTON v. UNITED STATES.**

No. 45803.

Court of Claims.

June 3, 1946.

Frederic N. Towers, of Washington, D. C. (Frost, Myers & Towers, of Washington, D. C., on the brief), for plaintiff.

Donald B. MacGuineas, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff brought this suit to recover job and office overhead expense for the periods from March 19 to November 15, 1935, and November 16, 1935, to January 28, 1936, (findings 26-30), for alleged unreasonable delay (findings 9, 22-24), for which he alleges the defendant was responsible and for which it should respond in damages for breach of the contract.

Prior to the making of the contract with plaintiff on November 22, 1934, defendant and the Largura Construction Company had entered into a contract for the construction by the Largura Company of a post office building at Oak Park, Ill. The Government terminated the Largura contract and thereafter, on June 16, 1934, issued an advertisement and an invitation for competitive bids for completion of the unfinished work called for by and in accordance with the Largura contract and specifications and certain supplementary or amended specifications. Plaintiff was the lowest bidder and its bid was accepted and the Standard Contract Form 23 for construction was duly executed by plaintiff and defendant by the Director of Procurement, Treasury Department, as contracting officer.

Plaintiff proceeded with the work under his contract until March 19, 1935, when there was a strike of the lathers employed by plaintiff, which strike continued until November 15, 1935, and operated to delay completion by plaintiff of the contract work. In the invitation for bids and the supplementary specifications for completion of the work defendant advised all bidders of the extent of the work which had been done on the building and furnished them with a list of the names and addresses of all subcontractors of the original contractor, Largura Company, among which was Edw. D. Chouinard, the lathing and plastering subcontractor of the Largura Company. The Largura Company had not fully paid Chouinard for work which he had performed and the union lathers employed by plaintiff's lathing and plastering subcontractor refused to work on the suspended ceiling hangers in the building until Chouinard was paid the balance of $262 due him for certain lathing work he had performed for the Largura Company (findings 8 and 9). Plaintiff finally paid, through his lathing subcontractor, the balance due Chouinard and the strike ended November 15, 1935.

On March 25, 1935, plaintiff, as required by the contract, submitted to defendant's architects, White and Weber, at the site, certain samples of wall and floor tile for the lobby of the building, but such samples were not submitted in writing as called for by the specifications. Soon afterwards the architects notified plaintiff that the samples were rejected on account of color, size and the general appearance such tile would give the lobby. Plaintiff did not submit any further samples of lobby tile, but on April 29, May 4 and 6, 1934, wrote defendant that the architects were delaying the work by failing to approve samples of tile. May 6, 1935, the contracting officer wired the architects to take immediate action on tile samples and was advised by such architects that plaintiff had not submitted tile samples that could be approved. The samples of tile which had been submitted and rejected were sent to the contracting officer, who

also rejected them. Thereupon the contracting officer on June 28 notified plaintiff to submit new samples to the architects, but plaintiff did not do this.

In July 1935 plaintiff was informed that White and Weber were doing preparatory work on contemplated changes which would eliminate the lobby tile provided for in plaintiff's specifications and restore the more expensive materials specified in the Largura contract. On July 23 White and Weber prepared a schedule of such changes which stated "no samples of additional tile are required." Change drawings dated September 15 were prepared and were submitted to plaintiff by White and Weber sometime between that date and October 30.

On October 24 plaintiff submitted to defendant a proposal for installing tile and marble in the toilet rooms for an extra price of $4,720, which defendant accepted on October 30, 1935. Also on October 30 plaintiff submitted another proposal for the elimination of the tile flooring, base and wainscoting in the lobby, vestibules and first floor stair halls. Defendant accepted this proposal on November 1. Since this eliminated the lobby tile, there was no longer any occasion for plaintiff to submit or for the architects to approve samples of such material. The completion of the contract was not delayed by the matter of tile samples. Plaintiff substantially completed the principal work on August 18, 1935, and between that date and January 26, 1937, performed certain work involving certain defects and omissions as ordered by defendant. The contract contemplated and provided for final inspection and acceptance by defendant of all work called for by the contract and as might be required thereunder by defendant. The work and the contract were not finally accepted as having been fully completed under and in accordance with all of the terms and provisions of the contract and specifications until the date of final settlement and final payment on March 9, 1937 (finding 25).

Counsel for defendant make the argument that plaintiff's claim for damages for delay for the periods from March 19 to November 15, 1935, and November 16, 1935, to January 28, 1936, accrued for the purpose of suit when the delay occurred and was therefore barred by sec. 156 of the Judicial Code, Sec. 262, U.S.C.A. Tit. 28, when the petition was filed, and that in any event such claim accrued not later than January 26, 1937, when it appears, as matters finally turned out, the contract work as required by defendant and as finally accepted by it was substantially completed.

Neither of these contentions is sustained by the facts in this case and the various provisions of the contract and specifications of November 22, 1934, and the decided cases. Myerle, Executor of Phineas Burgess, v. United States, 33 Ct.Cl. 1, 21, 22; Cohen, Goldman & Co., Inc., v. United States, 77 Ct.Cl. 713; Austin Engineering Co., Inc., v. United States, 88 Ct.Cl. 559; Joplin, et al. v. United States, 89 Ct.Cl. 345, 356, 362-364; Austin Engineering Co., Inc., v. United States, 97 Ct.Cl. 68, 72, 79; Fireman's Fund Indemnity Co. v. United States, 104 Ct.Cl. 648; B. W. Construction Company, A Corporation, v. United States, 100 Ct.Cl. 227, 235, 236; North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., 152 U.S. 596, 613, 614, 617, 14 S.Ct. 710, 38 L.Ed. 565.

We have consistently held that when a claim accrues upon complete performance of work or service or by acceptance of completion of contract work in satisfaction of all requirements of the contract the statute of limitations for bringing suit then begins to run and is not suspended by the continued prosecution of a claim or claims under the contract before the administrative departments. Withers v. United States, 69 Ct.Cl. 584; Cohen, Goldman & Co., Inc. v. United States, supra; John P. Moriarty, Inc., v. United States, 97 Ct.Cl. 338. But this is not such a case. The evidence here does not show an accrual by full completion and acceptance and subsequent prosecution of the claim administratively. The question here is whether, for the purpose of applying the six-year statute of limitation, the claim accrued before or at the time all work called for by the contract in suit, and as might be required by defendant thereunder, was ac-

cepted as having been fully and finally completed within the meaning and intention of the contract. Cf. United States v. Taylor, 104 U.S. 216, 221, 26 L.Ed. 721.

Although the contract period for completion as covered by various extensions of time expired October 3, 1936, and defendant made no claim for liquidated damages under article 9, this does not under the record facts determine the question whether the claims which plaintiff might have under the contract accrued for the purpose of suit, then or later, for the reason that, so far as the plaintiff's obligation to respond to further orders for work was concerned, the contract was not completed until defendant had given its acceptance to that effect. Defendant was using the building before it was completed and it evidently considered that there was no necessity for further extensions of time until formal and final acceptance of the work as having been finally completed under all the terms and conditions of the contract in connection with which terms and conditions the defendant might have required the contractor to do many things prior to such final acceptance.

Defendant contends that the rule applied by this court in the cases hereinbefore cited, and consistently followed in other cases, that a claim, whether on one or more items arising under a contract accrues, for the purpose of the statute of limitation for bringing suit, when the contract is completed or accepted as complete, where such acceptance is contemplated and provided for, "appears to be one of convenience to the contractor by permitting him to wait until completion of the work when all claims which may arise during its prosecution can then be prosecuted in a single action." Defendant further contends that "In principle it seems difficult to justify this departure, on grounds of the contractor's convenience, from the rule that the statute of limitations begins to run from the first date on which suit could be brought on the claim, the date of defendant's breach. Peoples Oil & Fertilizer Co. v. United States, 60 Ct.Cl. 765. If the Government commits a breach of contract in the midst of performance by the contractor there is no legal reason why he cannot immediately terminate the contract and sue for the breach. True the contractor may decide that it is advantageous to him to continue performance but that seems to be no reason why the contractor should be permitted thereby to prevent the statute of limitations from starting to run."

We think the rule, which is of long standing, is one that is based upon and justified by sound reason rather than of convenience, in order to prevent a multiplicity of suits and the splitting of causes of action to the end that all rights of the parties under the contract may be heard and determined at the same time and in one suit. The rule contended for by defendant would result not only in inconvenience but in delay, confusion and unnecessary expense to both parties and the court. It was not intended by Congress that section 156 of the Judicial Code, supra, should be interpreted to require a multiplicity of suits on various items of a claim arising under an entire contract. The courts have always so construed contracts and limitation statutes wherever possible. Nor do we think section 156 intended to require the splitting of causes of actions under Government contracts. Electric Boat Company, A Corporation, v. United States, 81 Ct.Cl. 361, 366-369. No fixed rule as to when a claim or cause of action accrues can be stated and applied in every case— the facts and the terms and conditions of the provisions and stipulations of the contract, agreement, or statute in each case must be considered. Savannah Bank & Trust Co., et al., Ex'rs v. United States, 75 Ct.Cl. 245, 247-249; Manufacturers Aircraft Association, Inc. v. United States, 77 Ct.Cl. 481, 522-528. When the Government puts an end to the contract the right of the contractor to sue accrues at that time. When the contractor elects to abandon the contract, because of a breach by the Government, whatever claim the contractor may have under the contract on account of such breach ordinarily accrues at that time, but it may accrue later under certain circumstances. For the purpose of the statute of limitations the breach may be complete at the date of abandonment or may be one that continues and thereby gives rise to the right of the contractor to

damages for a period subsequent to.the date of abandonment by the contractor. United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168; Spearin v. United States, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Needles, et al. v. United States, 101 Ct.Cl. 535.

Where a contract contains no provisions that indicate that all work which may be required by the Government under the contract shall be regarded as completed only when formally accepted, the claim accrues when the work is in fact completed or the services called for have been fully performed, but where, as here, the contract contemplated and provided not only for completion of the work in accordance with all terms of the contract and specifications but for acceptance of it as complete, the contract is not to be regarded as having been entirely completed until the work performed thereunder is accepted by the Government in full satisfaction of all requirements of the contract. Until such acceptance various items of a claim under the contract for extra work, changes, damages, etc., may arise although the main portion of the contract work may have been in fact substantially completed. The only exception to the reasonable and well founded rule that whatever claims the contractor may have under an entire contract accrues when the work is completed and accepted as complete, when acceptance is provided for, would be a case where, by reason of certain stipulations in the contract, the right of the contractor to sue and the jurisdiction of the court are conditioned upon compliance with a specified administrative procedure requiring a decision by the contracting officer and by the head of the Department, on appeal. This situation could not, of course, arise in connection with a claim for unliquidated damages. William Cramp & Sons Ship & Engine Building Company v. United States, 216 U.S. 494, 30 S.Ct. 392, 54 L.Ed. 587. Such a claim requiring administrative decision might arise at or near the end of the work and yet not be ripe for suit until the required procedure had been complied with and a decision had upon such item, notwithstanding all work required by the contract had been completed and accepted. A suit on such a claim, if rejected, could be brought within six years from the date of final decision thereon; however, if suit should be instituted on other claims for damages, changes, extra work, etc., under the contract, which claims accrued at an earlier date upon completion and final acceptance, the contractor, in order to avoid splitting his cause of action, would be required to bring such later accruing claim into the case for decision if such accrual should occur before the suit on other items of the claim under the contract should be decided. Electric Boat Company v. United States, 81 Ct.Cl. 361.

The contract in suit provided for acceptance of completion by defendant. Therefore, whatever claims plaintiff had under his contract accrued for the purpose of suit when the work performed by him under his contract was accepted by defendant as having been complete in accordance with all the terms of the contract. Until such acceptance the contract could not be regarded as having been completed, for until final acceptance the defendant might still have required other work of plaintiff. After acceptance it could not do so. Under the facts final acceptance of the completion of the contract was not had until March 9, 1937. Defendant's argument that the suit was barred when instituted on January 23, 1943, cannot, therefore, be sustained.

On the merits we are of opinion that plaintiff is not entitled on the facts, to recover as damages for breach of contract its job and office overhead expense incurred on account of alleged unreasonable delay during the period from March 19, 1935, to January 28, 1936, referred to in findings 22-30. The delay of 241 days from March 19 to November 15, 1935, was caused by a strike of lathers employed by plaintiff on the job, for which delay defendant gave extensions of time. The Government was not responsible for the delay caused by this strike and cannot be held liable under the contract for any expense which plaintiff may have incurred by reason thereof. Plaintiff's contract was one for the completion of the work called for by a contract with another contractor which had been terminated, and required him to

complete the building under the original Largura specifications as modified by supplementary specifications which provided for certain items of interior finish less expensive than those provided in the Largura specifications.

The specifications provided that information given relative to existing conditions was only for the convenience of bidders and that defendant assumed no responsibility for differences in the amount of work or materials actually on the site and the amounts stated in the specifications. Bidders were to visit the site and fully inform themselves as to existing materials and the conditions under which the work was to be done. The specifications also stated, among other things concerning prior subcontractors, that the lathing subcontractor under the Largura contract was one Chouinard and that substantially two percent of the lathing and plastering work had been completed. They further provided that plaintiff's work was to include correction of specified defects in Largura's work, and bids should be based on the assumption that all work in place (except for the defects specified) "is satisfactory and approved by the Government" and that "Bidders should therefore take into consideration the full value of such work, materials and equipment and this value shall be reflected in their bids."

Defendant made no representations to plaintiff that bound it to respond in damages in the event of a situation such as developed between plaintiff and his laborers because of the failure of the prior contractor to fully pay his subcontractor for work performed on the building for such prior contractor. Neither was defendant guilty of any concealment from plaintiff of any information which it had and which it was its duty to disclose to plaintiff. Plaintiff was given the names of all prior subcontractors and advised of the nature of the work which they had performed. The Government's refusal to pay the unsatisfied claim of Chouinard against the prior contractor so as to prevent a strike by plaintiff's workmen was not a breach of its contract with plaintiff.

The other claim of plaintiff that defendant breached the contract by delaying unreasonably in approving certain samples for wall and lobby tile and in deciding upon certain changes is not supported by the facts. The samples of tile submitted were rejected and further samples were not submitted as directed. There was no unreasonable delay in making decisions on plaintiff's proposals for changes.

Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.

JONES and WHITAKER, Judges, concur.

WHALEY, Chief Justice, concurs in the result.

MADDEN, Judge, took no part in the decision of this case.