**WESTERN WELL DRILLING CO., Limited,**
**v. UNITED STATES.**

No. 26981.

United States District Court.
N. D. California, S. D.
March 14, 1951.

Beresford & Webster, San Jose, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., Reynold H. Colvin, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiff, Western Well Drilling Company, entered into a contract with defendant, United States, in 1940 for the drilling of a water well at Hill Field, Utah. Because of rock formations encountered at a depth somewhat in excess of 500 feet, plaintiff failed to complete the well begun at the initial site. In a second attempt at a location selected by defendant United States, plaintiff again encountered rock and failed to reach water at the approximate depth specified in the government contract.

During the course of its work, plaintiff sought to obtain relief from the original contract requirements in accordance with the provisions of Article 4 of the contract. The government representative at the site of the drilling refused to authorize any change or modification in the terms of the contract, but directed plaintiff to proceed.

At the conclusion of plaintiff's second well drilling attempt, negotiations transpired by way of settlement of defendant's obligation for work performed. Not until the following year, on May 5, 1941, did the government tender an amount in the sum of $7,203 for work done. Plaintiff executed a release upon accepting this payment but at the same time reserved its right to file a claim for $9,995. This sum represented the additional amount plaintiff asserted it was entitled to for actual work and labor performed on the two well sites.

Plaintiff contends that it performed its obligations under the contract with defendant; that unusual conditions entitled it to modification in accordance contained in Article 4 of the contract;[1] that defendant failed to comply with the language contained in Article 4 inasmuch as the government representative failed to make a finding of fact as to conditions encountered; that defendant rendered an erroneous legal ruling as to the scope and application of Article 4 of the contract and that such ruling freed plaintiff from complying with the provisions of Article 15 of the contract,[2] which article sets forth certain administrative procedures which must be complied with by an aggrieved party before it is entitled to seek judicial relief.

The evidence at the extensive trial disclosed that plaintiff, an experienced, well-equipped and competent well drilling concern, entered into a water drilling contract after studying government specifications which outlined general geological conditions which might be encountered in the area of the selected site. The specifications warranted plaintiff only to the extent that they stated the particular region had no well within a distance of two miles. Anticipating alluvial and gravel subsurface condi-

---

1. Article 4: "Should the contractor encounter, or the Government discover, during the progress of the work subsurface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications, the attention of the Contracting Officer shall be called immediately to such conditions before they are disturbed."

2. Article 15: "Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

tions, plaintiff entered into a contract with defendant and proceeded to drill for water. At a depth of 528 feet plaintiff encountered an extremely hard rock formation. Despite efforts to penetrate the rock, plaintiff was unsuccessful with its original set of drills and damaged many of them in its effort to reach 650 feet, the depth set forth in the contract. The rock formation delayed plaintiff beyond the time limit set forth in the contract for completing the well and finally led plaintiff to request the right to terminate drilling at the initial site.

At the conclusion of plaintiff's unsuccessful efforts at site No. 1, defendant selected another location about one-half mile from the first site. Over its protests, plaintiff again commenced drilling operations. Its experience with well No. 2 duplicated its difficulties with the first well. When rock was encountered at 525 feet, plaintiff used a smaller rock drill which it ran through to 650 feet without encountering water.

The government directed plaintiff to cease operations when no water was discovered at 650 feet. Thereafter protracted negotiations took place between the parties to the contract as to the sum plaintiff was entitled to for work performed.

It should be noted that plaintiff made a written request of defendant at the time drilling was under way at the initial well site to make a finding of fact that plaintiff encountered "an unknown condition of an unusual nature" at such site within the meaning of Article 4 of the contract. Defendant failed to make such specific finding of fact. At the scene of the operations, defendant's representative informally observed that the equipment used by plaintiff appeared to him to be too light. He further expressed himself to the effect that the rock formation was not of such a nature as to entitle plaintiff to obtain additional time for performance of the contract nor to obtain increased compensation for the greater cost entailed by reason of the rock formation. Defendant's representative took the view that defendant had not warranted that the plaintiff would be able to proceed through formations of an alluvial nature.

The Court finds from the evidence that plaintiff did encounter subsurface rock formations at both sites which were unknown to the parties when they entered into the contract and which were unusual within the meaning of Article 4 of the contract. The term "unusual" does not refer to a condition which would be deemed a geological freak but rather a condition which would not be anticipated by the parties to the contract in entering into their initial agreement. Ruff v. United States, 96 Ct.Cl. 148. Plaintiff's equipment was adequate for drilling through alluvial formations in accordance with the expectations of the parties to the contract. The evidence shows that it was capable of cutting through rock formations of the kind at Hill Field. Plaintiff was actually able with the equipment at hand to penetrate through the rock to a depth of 650 feet at the second site.

The government was entitled in accordance with paragraph 8(a) of the specifications to discontinue work if it deemed such action advantageous.[3] The government took advantage of this clause and directed plaintiff to cease work at the second site after a depth of 650 feet had been reached without discovering water. Neither party was guilty of a breach of contract with respect to such cessation of work.

In connection with the provisions of Article 4 of the contract, defendant failed to make a finding of fact as required by the article. Defendant's failure was caused by misinterpretation of the scope of Article 4. Such misinterpretation is one of law and entitles plaintiff to seek relief in an action under the Tucker Act. 28

3. Paragraph 8(a): "8.a. Depth: The information at hand indicates that water will be penetrated at an approximate depth of six hundred and fifty (650) feet, although the work may be stopped at a shallower depth or continued to a greater depth upon the order of the Constructing Quartermaster or his authorized representative, if such action is determined to be to the advantage of the United States."

380

U.S.C.A. §§ 1346, 2401, 2402. This the plaintiff has done. See United States v. Johnson, 9 Cir., 153 F.2d 846. Since defendant failed to make a finding of fact the dispute between the parties is not one over a factual condition which calls for the application of cases relied upon by the government beginning with United States v. Callahan Walker Const. Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49. Rather, the instant case belongs in the category referred to in Tobin Quarries v. Central Nebraska, Public Power & Irr. District, D.C., 64 F.Supp. 200, 201, 211.

Defendant urges the statute of limitations as a bar to the present action. The Court previously passed upon this issue at the preliminary stages of the instant litigation. It renews the position taken at such stages. See Holton v. United States, 106 Ct.Cl. 477, 65 F.Supp. 903, 906; Joplin v. United States, 89 Ct.Cl. 345; Austin Engineering Co. v. United States, 88 Ct.Cl. 559.

■ It is ordered that judgment be entered in favor of plaintiff and against defendant in the amount of $9,995, together with costs, upon preparation of findings of fact and conclusions of law.