Per Curiam:*
Tbis opinion is not concerned with the merits of this action. By agreement and at the request of the parties the sole question presented for decision at this time is the extent to which the plaintiffs’ several claims are time-barred.
A brief discussion of the development of the case into its present posture is appropriate, especially in view of the age of the case and the fact that the defendant has yet to file an answer.
The suit arises out of eleven contracts, identical in all relevant respects, awarded plaintiffs between May 21, 1952 and July 24, 1952, by the Army Corps of Engineers for the construction of certain buildings at Charleston Air Field, Charleston, South Carolina.
The petition, drawn in two counts, was filed here on April 24,1961. Count One pleads twenty-eight separate instances, covering all eleven contracts, in which it is alleged that the defendant improperly failed to award plaintiffs’ equitable adjustments. Count Two pleads a series of alleged breaches of the same contracts presumably based on the same occurrences that are the subjects of the twenty-eight claims advanced in Count One. Verbiage aside, this subject matter overlap is conclusively demonstrated by the following averment contained in both the original petition and the later-filed amended petition (Count Two, par. 4):
Petitioner hereby stipulates and agrees that if any of the Items 1 through 21[1] are favorably considered, to deduct the amount so allowed for such item by this Honorable Court from the Second Cause of Action; likewise, petitioner hereby agrees to dismiss either the First Count or the Second Count if either should be considered favorably in its entirety.
Similarly, the prayers in the two petitions seek alternative, not cumulative relief under the two counts pleaded.
*322 On October 23, 1961, the defendant moved for summary judgment on the ground that neither count of the petition stated a claim on which relief could be granted. By an order of February 2, 1962, the court denied defendant’s motion.
On June 20, 1962, after allowance of defendant’s motion for a more definite statement, the plaintiffs filed an amended petition, in two counts, essentially similar to the original.
Instead of renewing its motion for a more definite statement, the defendant again moved for summary judgment. This time it urged that claims one through five of Count One failed to state a claim on which relief could be granted. In addition, the defendant contended that all of the remaining claims of Count One as well as the breach claims contained in Count Two were barred by the expiration of the statute of limitations.
After hearing argmnent, the court, by an order of May 20, 1963, dismissed claims one through five of Count One and otherwise denied defendant’s motion without prejudice, remanding the case to the trial commissioner for further proceedings. On July 12, 1963, the court denied defendant’s motion for clarification and amendment of this order.
Thereafter counsel for the parties met with the trial commissioner and agreed that the case should be presented on the basis of a review of the administrative record, which record (consisting of papers contained in ten packing cases) was received in evidence as were the parties’ exhibits previously filed in the two summary judgment proceedings.
After arrangements were thus concluded for proceeding under an assignment of errors to be filed by the plaintiffs, but before any submissions had been filed pursuant thereto, counsel again approached the commissioner and requested that the agreed procedure be vacated and the threshold question of limitations be isolated for final decision.
In accordance with request of counsel, the commissioner issued an order of severance under Buie 47 (b) and prescribed a schedule for the seriatim submission of requested findings of fact and briefs.
The opposing contentions of the parties may be briefly gtated. As initially presented, the defendant’s contention was that the claims herein asserted are only timely to the extent *323 that the court finds that they were embraced by the standard disputes clause contained in each of the eleven contracts in suit so that administrative fact-finding was both mandatory and exclusive by virtue of the parties’ contractual undertakings and the provisions of the Wunderlich Act, 41 USC § 321. Such claims are timely, the defendant conceded, because it is undisputed that each of the several proceedings before the Armed Services Board of Contract Appeals terminated less than six years prior to institution of the present suit. With respect, however, to those claims as to which the court feels free to make its own original factual determinations, the defendant contended that suit is barred because the construction contracts out of which the claims arose were completed, and the work done thereunder formally accepted, more than six years before filing of the instant suit. Later, the defendant expanded its argument (after the Government’s position was clarified as a result of the presentation of Nager Elec. Co. v. United States, decided this day, ante, p. 234) to contend that the entire suit was barred since the petition was filed more than six years after completion and acceptance of the work.
For their part, the plaintiffs have contended that all of the claims sued on are timely whatever .their intrinsic nature, because it was not until approximately one year prior to filing of the petition here that the plaintiffs received their final vouchers and estimates under the contracts in suit. It was not until then, plaintiffs say, that it was clear that no further work would be required of them under the contracts, and it is therefore at that time that all claims arising out of the contracts first accrued for purposes of suit.
The relevant contract provisions and operative facts are detailed in the findings of fact accompanying this opinion. Each of the eleven contracts contained the standard clauses covering: (1) Changes and Extras, (2) Changed Conditions, (3) Delays-Damages, (4) Suspension of Work, and (5) Disputes.
Each of the claims pleaded in Count One of the amended petition was presented to and considered by the contracting officer and the Armed Services Board of Contract Appeals.
*324 It is agreed by the parties that in none of the eleven contracts in suit were proceedings before the ASBCA. concluded more than sis years prior to institution of suit in this court.
The nature of each of the claims set forth in Count One of the petition is detailed in the findings of fact filed in conjunction herewith. The several contract clauses previously referred to herein, either alone or in combination, afforded basis for awarding plaintiffs complete relief on each of such claims when presented, as they were, to the ASBCA for review of the contracting officer’s determinations. In turn, as acknowledged on the face of both the petition and amended petition, an award of complete relief on the claims embodied in Count One would constitute complete relief under the claims averred in Count Two, albeit such aver-ments denominate the latter claims as being for breach of contract. It is now settled that the descriptive label affixed to a claim for pleading purposes is not determinative of its real nature. United States v. Utah Constr. & Mining Co., 384 U.S. 394 (1966); United States v. Anthony Grace & Sons, Inc., 384 U.S. 424 (1966); Morrison-Knudsen Co. v. United States, 170 Ct. Cl. 757, 345 F. 2d 833 (1965); Specialty Assembling & Packing Co. v. United States, 156 Ct. Cl. 252, 255, 298 F. 2d 794, 796 (1962). It is therefore concluded that all claims now before this court were within the jurisdiction of the ASBCA.
The corollary of ,a finding of board jurisdiction in respect to a particular contract dispute is that the statute of limitations for the institution of suit thereon cannot commence to run until final board action occurs. Nager Elec. Co. v. United States, decided this day, ante, p. 234. This court has so held in the past. E.g., Holton, Seelye & Co. v. United States, 106 Ct. Cl. 477, 500-02, 65 F. Supp. 903, 907-08 (1946) ; Cosmopolitan Mfg. Co. v. United States, 156 Ct. Cl. 142, 144, 297 F. 2d 546, 547-48 (1962). Since such action did not occur with respect to the claims here involved until less than six years prior to filing of the petition in this court, the bar of limitations does not apply.
In sum, it is held that all claims remaining in suit are timely because it is undisputed that with respect to each of the eleven contracts involved there were claims subject to the *325 contract requirement of initial determination at the administrative level and such administrative action was concluded far less than six years prior to the filing of suit. See 60-1 CCH BOA, pars. 2518, 2551, 2569 and 2627. We hold, and have held, that the existence of even one such claim under a particular contract forestalls the running of the period of limitations on suit as to all other claims pertaining to the same contract. See Nager Elec. Co. v. United States, decided this day, ante, p. 234; Austin Eng'r Co. v. United States, 88 Ct. Cl. 559, 563-64 (1939) ; Holton Seelye & Co. v. United States, 106 Ct. Cl. 477, 498-501, 65 F. Supp. 903, 906-07 (1946). If, however, the time-period began at the completion-and-acceptance of the contracts in 1953 and 1954 but limitations was tolled during the administrative process (see the dissenting opinion in Crown Coat Front Co. v. United States, 363 F. 2d 407 (C.A. 2, 1966)* and Northern Metal Co. v. United States, 350 F. 2d 833 (C.A. 3, 1965), all the claims now in the case were nevertheless timely when the petition was filed in 1961. Any excess over six years was more than compensated by the period of administrative consideration.
FINDINGS OF FACT
The court, having considered the pleadings and materials filed in the case, the report of Trial Commissioner George Willi, and the briefs of counsel, makes findings of fact as follows:
1. The individual plaintiffs are members of a partnership, Conn Structors (hereinafter referred to as the contractor), located in Miami, Florida.
2. The corporate plaintiff, a New Hampshire banking corporation, was the contractor’s surety on the contracts involved in this suit.
3. The eleven construction contracts in suit (hereinafter identified only by the last three digits of the contract number) are listed below by number, date of award, amount, time originally allotted for completion and time actually *326 allotted for completion after time extensions: taking account of authorized
Contract No. Date Amount Orig. Comp. Date Actual Comp. Date
DA-38-081-Eng 173 5/21/52 1, 724, 397. 60 210 fia. 457 fia.
DA-38-081-Eng 186 6/6/ 52 335,118. 00 210 “ 496 “
DA-38-081~Eng 187 6/6/ 52 247,193. 00 150 “ 479 “
DA-38-081-Eng 188 6/6/ 52 81, 600. 00 120 “ 407 “
DA-38-081-Eng 191 6/26/52 168, 920. 00 120 “ 457 “
DA-38-081-Eng 193 6/26/52 108, 600. 00 120 “ 483 “
DA-38-081-Eng 197 6/20/52 139, 397. 00 120 “ 478 “
DA-38-081-Eng 201 6/26/52 793, 779. 00 210 “ 502 “
DA-38-081-Eng 204 6/26/52 107, 500. 00 120 “ 466 “
DA-38-081-Eng 212 7/24/52 56, 889. 00 120 “ 393 “
DA-38-081-Eng 215 7/24/52 70,669. 00 90 “ 393 “
4. Each of the contracts in suit contained the following provisions:
SPECIFICATIONS AND DRAWINGS — 'The contractor shall keep on the work a copy of the drawings and specifications and shall at all times give the contracting officer access thereto. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of differences between drawings and specifications, the specifications shall govern. In any case of difference in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the contracting officer who shall promptly make a determination in writing. Any adjustment by the contractor without this determination shall be at his own risk and expense. The contracting officer shall furnish from time to time such detail drawings and other information as he may consider necessary, unless otherwise provided.
CHANGES AND EXTRAS — The contracting officer may at any time, in writing, and without notice to the sureties, order extras or make changes in the drawings and/or specifications of this contract providing such extras or changes are within the general scope thereof. If any such extra or change causes an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. Any claim of the contractor for adjustment under this Clause must be asserted in writ *327 ing within 30 days from the date of receipt by the contractor of the notification of extra or change: PROVIDED, howeyer, That the contracting officer, if he decides that the facts justify such action, may receive, and act upon any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Clause 6 [2] hereof. But nothing provided in this clause shall excuse the contractor from proceeding with the prosecution of the work as changed.
CHANGED CONDITIONS_ — Should the contractor encounter, or the Government discover, during the progress of the work subsurface and/or latent physical conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown physical conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the drawings and specifications, the contracting officer shall be notified promptly in writing of such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they do so materially differ the contract shall be modified to provide for any increase or decrease of costs and/or difference in time resulting from such conditions. If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Clause 6 hereof.[3]
DELAYS-DAJVLAGES — (a) Termination for Default. If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in the contract, or any extension therof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby, and for liquidated damages for delay, as fixed in the specifications or accompanying papers, until such reasonable time as may be required for the final completion of the work, *328 or if liquidated damages are not so fixed, any actual damages occasioned by such, delay. If the contractor’s right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor.
(b) Damages for Delay. If the Government does not terminate the right of the contractor to proceed, as provided in subparagraph (a) hereof, the contractor shall continue the work, in which event he and his sureties shall be liable to the Government, in the amount set forth in the specifications or accompanying papers, for fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted, or if liquidated damages are not so fixed, any actual damages occasioned by such delay.
(c) Time Extensions. The right of the contractor to proceed shall not be terminated, as provided in sub-paragraph (a) hereof, nor the contractor charged with liquidated or actual damages, as provided in subpara-graph (b), because of any delays in the completion of the work due to causes beyond his control and without his fault or negligence, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, either in its sovereign or contractual capacity, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes; PROVIDED, That the contractor shall, within 10 days from the beginning of any such delay, unless the contracting officer shall grant a further period of time prior to the date of final settlement of the contract, notify the contracting officer in writing of the causes of delay. The contracting officer shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal as provided in the “Disputes” Article hereof.
DISPUTES — Except as otherwise specifically provided in this contract, all disputes concerning question of fact which may arise under this contract, and which are not disposed of by mutual agreement, shall be decided by the contracting officer, who shall reduce his *329 decision to writing and send by registered mail, return receipt requested, a copy thereof to tbe contractor at his address shown herein. Within 30 dajrs from the receipt thereof the contractor may appeal in writing to the Chief of Engineers, whose written decision thereon, or that of his designated representative or representatives, shall be final and conclusive upon the parties hereto unless, within 30 days after the receipt thereof by the contractor, he appeals in writing to the Secretary of the Army, which appeal shall operate to vacate said decision of the Chief of Engineers. If the dispute is determined by the Secretary of the Army, his written decision, or that of his designated representative or representatives, shall be final and conclusive upon the parties hereto. The Chief of Engineers or the Secretary of the Army may designate an individual, or individuals, other than the contracting officer, or a board, as his authorized representative to determine appeals under this article. In any proceeding under the provisions of this article, the contractor shall be afforded an opportunity to be heard and offer evidence in support of his appeal. Pending decision of a dispute hereunder the contractor shall diligently proceed with the performance of this contract. Any sum or sums allowed to the contractor under the provisions of this article shall be paid by the Government as part of the cost of the articles or work herein contracted for and shall be deemed to be within the contemplation of this contract.
PAYMENTS TO CONTRACTORS— (a) Unless otherwise provided in the specifications, progress payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, or at more frequent intervals as determined by the contracting officer, on estimates approved by the contracting officer. In preparing estimates the material delivered on the site and preparatory work done may be taken into consideration.
(b) In making such progress payments there shall be retained 10 per cent on the estimated amount until final completion and acceptance of all work covered by the contract: PROVIDED, however, That the contracting officer, at any time after 50 per cent of the work has been completed, if he finds that satisfactory progress is being made, may make any of the remaining progress payments in full: And provided further, That on completion and acceptance of each separate building, vessel, *330 public work, or other division of the contract, on which the price is stated separately in the contract, payment may be made in full, including' retained percentages thereon, less authorized deductions.
(c) All material and work covered by progress payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving the contractor from the sole responsibility for all materials and work upon which payments have been made or the restoration of any damaged work, or as a waiver of the right of the Government to require the fulfillment of all of the terms of the contract.
(d) Upon completion and acceptance of all work required hereunder, the amount due the contractor under this contract will be paid upon the presentation of a properly executed and duly certified voucher therefor, after the contractor shall have furnished the Government with a release, if required, of all claims against the Government arising under and by virtue of this contract, other than such claims, if any, as may be specifically excepted by the contractor from the operation of the release in stated amounts to be set forth therein. If the contractor’s claim to amounts payable under the contract has been assigned under the Assignment of Claims Act of 1940, 54 Stat. 1029 (41 U.S.C. Sec. 15), a release may also be required of the assignee at the option of the contracting officer.
SUSPENSION OF WOEK — The contracting officer may order the contractor to suspend all or any part of the work for such period of time as may be determined by him to be necessary or desirable for the convenience of the Government. Unless such suspension unreasonably delays the progress of the work and causes additional expense or loss to the contractor, no increase in contract price will be allowed. In the case of suspension of all or any part of the work for an unreasonable length of time causing additional expense or loss, not due to the fault or negligence of the contractor, the contracting officer shall make an equitable adjustment in the contract price and modify the contract accordingly. An equitable extension of time for the completion of the work in the event of any such suspension will be allowed the contractor, provided, however, that the suspension was not due to the fault or negligence of the contractor. Provided, further, that no suspension will be ordei'ed or adjustments made under tins paragraph for delays aris *331 ing as the result of changes ordered or as the result, of changed conditions encountered under the respective articles relating to changes and changed conditions or as the result of any delays for which an extension of time may be granted under the delays-damages article of the contract.
5. The undisputed evidence shows that, as to all contracts except No. 187, formal Notices of Acceptance were issued by defendant between January 15, 1954 and March 2, 1954, formally acknowledging final acceptance of the work under ten of the contracts as of various dates between August 20, 1953 and December 15, 1953. Although the evidence does not include a Notice of Acceptance covering No. 187, it is clear that in fact all work prerequisite to acceptance under that contract w.as completed within the year 1953. See Finding 3, supra.
6. After completion of the work the contractor submitted payment vouchers under each of the contracts in suit. The following table reflects, by contract, the dates on which such payments were made and the portion of contract price remaining to be paid thereafter:

Contract Date of Payment of Balance Amount No. of Contract Price, Except Withheld $100 or Other Sum Withheld

173 April 2, 1954 $5,100
18'6 February 1, 1954 100
187 February 3, 1954 100
188 February 1,1954 100
191 February 2, 1964 100
193 February 1, 1954 100
197 March 2, 1954 100
201 March 31, 1954 2,600
204 February 1, 1954 100
212 February 1, 1954 100
215 February 1, 1954 100
7.Claims under each of the eleven contracts in suit were heard and determined by the Armed Services Board of Contract Appeals. The Board rendered its decisions on those various claims during the period January through April 1960. 60-1 CCH B CA, pars. 2518,2551,2569 and 2627.
8.By a letter of March 10, 1961, following the Board actions referred to in Finding 7, above, the contracting officer *332 transmitted final and semi-final estimates and vouchers as follows:
“10 March 1961
“Conn Structors 1607 Congress Building Miami, Florida
Re: Contracts Nos. DA-38-081-ENG-173,186,187,188,191,193, 197, 201,204,212, and 215, Charleston Air Force Base, S.C.
Gentlemen:
Attached for your signature, and return of the original copy to this office for further processing and payment, are final and semi-final payment estimates for the referenced contracts as follows:

Contract No. Pmt. Estimate No. Amount

DA-38-081-ENG-173 27 — Semi-final $29, 456. 88
“ “ “ “ -186 21 — Final 4, 212. 33
(< U (( 19 — Final 100.00
“ “ “ “ -188 17 — Final 100. 00
“ “ “ “ -191 14 — Final 491.15
“ “ “ “ -193 17 — Final 333. 50
it U ft u «.^97" 19 — Semi-final 419.33
.. “ -201 23 — Semi-final 9, 021.96
“ “ “ “ -204 15 — Final 100. 00
“ “ “ “ -212 14 — Final 100. 00
“ “ “ “ -215 15 — Final 100. 00
Total payment due $44, 435.15
The above payment estimates for Contract Nos. DA-38-081-ENG-173, 197 and 201 are not final as these are the contracts that the C&A Board decisions Nos. 1658 through 1666 will affect.
Since this concludes all outstanding claims on file in this office for the contracts other than 173, 197 and 201, final payment is in order.
You may retain your files. the second copy of the estimates for Very truly yours, J. E. THOMPSON Colonel, Corps of Engineers District Engineer Contracting Officer
11 Incls as stated above”
*333 9. Within the month of March 1981, the contractor duly executed and returned the estimates and vouchers referred to in Finding 8, above.
10. Claims numbered 6 through 28 of Count One of the petition involve disputes of the respective natures indicated below:
No. 6. This claim involves a dispute as to whether the contract specifications required that all, or only part, of the cement floor surfaces in certain dormitory buildings were to be hand steel trowelled and burnished. Tire claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5135, 60-1 CCH, BCA, par. 2551.
No. 1. This claim involves the contractor’s right to reimbursement for expenses incurred in alterations of sidewalks, exit lights, door jams, doors and footings necessitated by the installation of fire escapes in the manner indicated by the contractor’s shop drawings which had been approved by the contracting officer but were at variance with the contract specifications and/or drawings. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5160, 60-1 CCH BCA, par. 2569.
No. 8. The contract drawings depicted toilet doors opening inwardly. The contractor’s shop drawings, which were approved by the contracting officer, depicted the same doors as opening outwardly. The claim is for reimbursement of expense incurred to make the doors conform with the contract drawings. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5161, August 25,1959.
No. 9. This claim involves the question of whether certain land clearing, grading and seeding required of the contractor was or was not in excess of the relevant requirements of the contract specifications. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5158, 60-1 CCH BCA, par. 2569.
No. 10. Under this claim the contractor seeks allowance for additional expenses incurred in doing what it contends was extra work imder the contract. It is alleged that the extra work resulted from instructions given by defendant’s project engineer requiring a variance from the requirements of the contract drawings which, it is alleged, were themselves in internal conflict with respect to the relative positioning of a concrete block wall and various beams. This claim was the subject of *334 the Board’s decision on the merits in ASBCA Docket No. 4948,60-1 CCH BCA, par. 2551.
No. 11. This claim is for additional costs incurred in the site assembly of sleeping room closets. The contractor asserts that the contract and shop drawings contemplated off-site prefabrication and sectionalization of such closets. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 4949, 60-1 CCH BCA, par. 2518.
No. 12. The contract specifications called for single buck steel door frames. The contractor submitted shop drawings showing double buck frames. Use of these latter frames resulted in a space of approximately one inch between the frame and the wall which defendant required the contractor to close. The claim is for the additional work and material required to effect closure of this space. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5026, 60-1 CCH BCA, par. 2518.
No. 13. This claim involves the question of whether the contract specifications required that certain concrete block surfaces that were to be painted be first treated in a prescribed manner preliminary to receiving the paint. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5073, 60-1 CCH BCA, par. 2518.
No. 14. The contract specifications provided that concrete forms could be removed only with the approval of the contracting officer. The contracts also provided that operations would be conducted in accordance with a particular Corps of Engineers safety manual plus such other safety requirements as the contracting officer determined to be reasonable. The contracting officer required reshoring. In this claim the contractor asserts that the required reshoring was not reasonable and seeks damages for extra expense and disruption of the orderly sequence of contract work. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5162,60-1 CCH BCA, par. 2627.
No. 15. Areas of certain concrete floors were found to be defective and the contractor required to remedy the defects. It was agreed that rubbercreting would be an appropriate remedy. The contractor proceeded to rubbercrete the defective areas but not the entire surface in which the defects occurred. The contractor was required to rubbercrete the entire surface in order that its appearance be uniform. The claim is for compensation for the additional rubbercreting. This claim was *335 the subject of the Board’s decision on the merits in ASBCA Docket No. 5072, 60-1 CCH BOA, par. 2551.
No. 16. This claim is essentially identical to Claim No. 15, above, the only difference being the differing locations of the floor areas on which the rubbercreting was done. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5237, 60-1 CCH BOA, par. 2551. .
. No. 17. This claim is basically similar to Claim No. 12, above. Use of door bucks depicted on the contractor’s shop drawings, allegedly approved by the defendant, resulted in an interior surface gap between the door frames and the surrounding walls. The claim is for compensation for the cost of sealing these gaps and anchoring the frames to the walls. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 4947, April 15,1960.
No. 18. In this claim the contractor seeks damages for interruption of the orderly sequence of the contract work allegedly occasioned by the defendant’s insistence that the concrete floor of the Base Maintenance Building not be poured until the roof of that building was completed. The dispute in this connection centers on two issues, i.e., whether the contract plans and specifications required completion of the roof prior to pouring of the floor and whether the defendant, in fact, directed that the work be done in this sequence. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5246,60-1 CCH BCA, par. 2569.
No; 19. This claim presents the question of whether certain subsurface water encountered by the contractor in the course of excavation constituted a changed condition within the meaning of the subject contract. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5235? August 25, 1959.
No. .20. The contract specifications provided that sheathing should be “face” nailed. The contracting officer required that the sheathing be “toe” nailed. It is undisputed that this requirement constituted a departure from the specifications. The dispute is over whether the latter procedure was any more expensive for the contractor than the former. The contractor ■alleges not only that it was but that use of this procedure disrupted the orderly sequence of its other work. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5240, August 25, 1959.
No. 21. This claim concerns the propriety of the defendant’s rejection of a particular concrete slab. The *336 specifications provided that such slabs be finished by a prescribed wood-float process. The contractor contends that the slab in question was rejected because the defendant desired a steel trowel finish. The defendant contends that the rejection was made because the wood-float finish was not done in accordance with the, applicable specifications. The claim is for the cost of removing the rejected slab and replacing it. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5241, August 25,1959.
No. 22. This dispute involves the meaning of the contract specifications as they concern responsibility for maintenance of specified temperatures during prescribed periods before and after the installation of asphalt floor tile. The contractor bore this heating cost and sues for its recovery. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5244, August 25,1959.
No. 23. This claim concerns the interpretation of a change order providing for the installation of certain baseboards and shoe molds. This issue is whether the amendment required that these additional surfaces were to be painted as required by the contracting officer. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5238, August 25, 1959.
No. 24. The contracting officer directed the contractor to paint various pipes, pipe hangers and duct hangers. The contractor seeks reimbursement for the cost of this painting on the theory that it was not required by the contract specifications. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5234, August 25,1959.
No. 25. The specifications stipulated a particular treatment for wood floors that were to receive asphalt tile. The contractor contends that he was required, to perform treatment processes beyond those required in the specifications and seeks damages for the cost thereof. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5236, August 25,1959.
No. 26. This claim is for additional compensation which the contractor alleges is due it for expenses incurred in replacing various wooden wall studs. The contention is that the materials required to be replaced met the contract requirements and specifications. This claim was -the subject of the Board’s decision on the merits in ASBCA Docket No. 5243, August 25, 1959.
No. 27. This claim is essentially identical to that contained in No. 26, above, the only difference being that here the claim is directed to wooden ceiling joists rather *337 than wall studs. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5242, August 25,1959.
No. 28. This claim concerns the question of whether the contract specifications entitled the contracting officer to insist that the contractor employ a superintendent for each one of its eleven contracts. The contractor asserts that the contracting officer only acquired this right in the event that the work was behind schedule. In that connection the contractor denies that the work was, in fact, behind schedule. The claim is for the recovery of additional expenses and damages for interruption of the orderly sequence of work allegedly occasioned by compliance with the contracting officer’s directive. This claim was the subject of the Board’s decision on the merits in ASBCA Docket No. 5159, 60-1 CCH BCA, par. 2518.
11. Count Two of the petition alleges thirteen general respects in which the particular actions of the defendant detailed in the discussion of the individual claims contained in Finding 10, constituted various breaches of contract.
CONCLUSION OK LAW
Upon the foregoing findings of fact and opinion, it is concluded that all remaining claims included in the amended petition are within the jurisdiction of this court and are not barred by the statute of limitations of 28 U.S.C. Sec. 2501. The case is therefore remanded to the trial commissioner for further proceedings.

This opinion is largely based upon parts of the opinion prepared, at the direction of the court, by Trial Commissioner George Willi.

 In fact, both the original and amended petitions plead 28, not 27, separately numbered claims under Count One.

 Since announcement of the instant opinion the United States Supreme Court on April 10, 1967, reversed the Crown Coat Front decision, 386 U.S. 503.

 i.e., DISPUTES.

 i.e., DISPUTHS.