Ronn JAFFE d/b/a Ronn Jaffe Associates, Appellant,

v.

Ronald Mickey NOCERA d/b/a Papermill Associates, and Columbine Ltd., General Partner of Papermill Associates, Appellees.

No. 84–497.

District of Columbia Court of Appeals.

Argued April 17, 1985.

Decided June 6, 1985.

Arthur T. Kornblut, Washington, D.C., with whom Linda S. Matlin, was on the brief, for appellant.

Daniel M. Litt, Washington, D.C., with whom Neal Goldfarb, Washington, D.C., was on the brief, for appellees.

Before MACK, BELSON and TERRY, Associate Judges.

MACK, Associate Judge:

Following arbitration of a contract dispute between the parties to this appeal, an arbitration panel entered an award of $76,-103.71 for the claimant, appellant Ronn Jaffe d/b/a Ronn Jaffe Associates (Jaffe), against "Ronald Mickey Nocera d/b/a Papermill Associates, Columbine, Ltd., General Partner." Jaffe petitioned the Superior Court to confirm the award against Ronald Mickey Nocera (Nocera), Papermill Associates, and Columbine, Ltd., appellees here. Nocera moved to dismiss the award to the extent that the arbitrators intended to hold him personally liable. The trial court granted that motion, confirming the award only as against Papermill and Columbine. Jaffe appeals that decision, and we reverse, finding that Nocera's motion to dismiss was filed outside of the period allowed by the District of Columbia Arbitration Act for motions to vacate arbitration awards, and therefore should not have been entertained by the trial court.

I

On July 31, 1980, the parties entered into a contract for interior design work on the Papermill Condominium project in Georgetown. On the title page of the contract, the "owner" is identified as "Ronald Mic-key Nocera, Papermill Associates." On the signature page, however, the "owner" is described as follows:

> PAPERMILL ASSOCIATES LIMITED
> PARTNERSHIP
> COLUMBINE LTD., GENERAL PARTNER
> By: s/ _____
> Ronald Mickey Nocera

Although not identified as such in the contract, Nocera was the president of Columbine, which in turn was a general partner of Papermill Associates. The Papermill Condominium project was the sole asset of Columbine and Papermill.

Article 11.1 of the contract provides that "[a]ll claims, disputes, and other matters in question between the parties to this Agreement, arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise...."

In May of 1981, a dispute arose between the parties. Attempts to settle the dispute informally were unavailing, and on March 8, 1982, Jaffe filed a demand for arbitration with the American Arbitration Association (AAA). The respondent on the demand was identified as "Ronald Mickey Nocera d/b/a Papermill Associates Limited Partnership, Columbine Ltd., General Partner." The demand was served upon Nocera personally, and a copy was sent to his lawyer, Philip Horowitz. All of the succeeding correspondence to the parties from the AAA bears the caption "Ronn Jaffe d/b/a Ronn Jaffe Associates and Ronald Mickey Nocera d/b/a Papermill Associates Limited Partnership, Columbine Ltd., General Partner."

Pursuant to its rules, the AAA requested that the parties choose acceptable arbitrators and potential hearing dates. The AAA sent this request both to Jaffe's attorney and to Nocera's attorney, Horowitz. On April 7, 1982, the AAA received a letter from another attorney at Horowitz's law

firm, Dorothy Sellers. The letter was captioned "Re: Ronn Jaffe Associates v. Papermill Associates Ltd. Partnership." In the letter, Sellers said that she would be handling the arbitration "on behalf of Papermill Associates" and asked that all correspondence regarding the arbitration be addressed to her rather than to Horowitz. On April 23, 1982, Sellers executed a stipulation agreeing to certain compensation for the arbitrators on behalf of "Nocera/Papermill." Sellers captioned all succeeding correspondence to the AAA, however, as "Jaffe v. Papermill", including a counterclaim ("Papermill v. Jaffe") filed June 2, 1982.

A three-day hearing on the dispute was held in the fall of 1982. Nocera attended two days of the hearings and testified on one of those days. On October 22, 1982, the arbitrators awarded $76,103.71 to Jaffe. The named respondent in the award was "Ronald Mickey Nocera d/b/a Papermill Associates Limited Partnership, Columbine Ltd., General Partner." Pursuant to D.C. Code § 16–4309 (1981), which allows a party to the arbitration to file a motion to modify or correct the award with the arbitrators within 20 days of the award, on November 4, 1982 Sellers filed a timely motion to vacate or correct the award with the arbitrators. That motion did not request relief on the ground that Nocera could not be held personally liable under the contract, however. The motion was denied by the arbitrators on December 2, 1982.

On December 7, 1982, Jaffe's attorney informed Sellers that he intended to enforce the award against Nocera in his personal capacity. On December 10, after the 20-day statutory period for post-award motions to the arbitrators had expired, Sellers sent a letter to the AAA requesting clarification of the award. That letter reads, in part: "[T]he case caption refers to Nocera, Papermill Associates and Columbine. If they are jointly the 'respondent,' that would of course affect the assets which might be used to satisfy any judgment

entered. Thus, the requested clarification is that the respondent be identified as Papermill Associates Limited Partnership." Although Sellers signed this letter as "attorney for Papermill," it is apparent that the requested relief could inure only to the benefit of Nocera. Following receipt of an objection by Jaffe, the AAA refused to submit this clarification request to the arbitrators, on the ground that the 20-day period had expired.

The Arbitration Act provides that motions to vacate arbitration awards must be filed in the Superior Court "within ninety days after delivery of a copy of the award to the applicant." D.C. Code § 16–4311(b) (1981). Similarly, motions to modify or correct awards must be made within 90 days, *id.* § 16–4312(a). Accordingly, a petition to vacate or modify the award could have been filed in the Superior Court until January 20, 1983. The arbitrators declined to address the question of Nocera's personal liability on December 14, 1982. Sellers thus had five weeks, from December 14, 1982, until January 20, 1983, to file a motion to vacate the award to the extent that it held Nocera personally liable for the amount owed under the contract. No such motion was filed, however.

On January 5, 1983, Jaffe made official the fact that he intended to confirm the award against Nocera in his personal capacity, filing a petition to confirm the award against Nocera, Papermill and Columbine jointly and severally. Nocera was personally served with a copy of the petition. Even following receipt of the petition, no motion to vacate was filed within the two weeks remaining of the 90-day limitations period. On January 28, 1983, the Papermill Condominium, the sole asset of Papermill Associates and Columbine Ltd., was sold at a foreclosure sale.

On January 31, 1983, 11 days after the 90-day period for a court challenge to an award had run, attorney Sellers filed a response to the confirmation petition on behalf of "Respondents." As defenses to the petition, she asserted, *inter alia*, that

the arbitrators had exceeded their powers, and that the Superior Court lacked personal and subject matter jurisdiction over Nocera. No defense that Nocera could not be held personally liable on the contract was specifically alleged. No such defense was raised until September 16, 1983, five days before a scheduled hearing on the petition to confirm, when Sellers filed a motion to dismiss the petition on behalf of Nocera.

When the case was called for a hearing, on September 21, 1983, the Honorable Paul F. McArdle sent the case back to the motions court to rule on Nocera's motion to dismiss and on a motion for summary judgment filed by Jaffe. The motion for summary judgment requested that Nocera's defenses to the confirmation petition be dismissed because they were filed after the expiration of the 90-day statute of limitations for motions to vacate or modify arbitration awards. On October 14, 1983, the Honorable Peter Wolf heard arguments on the pending motions and decided to remand the case to the arbitrators for clarification of the identity of the respondent.[1] The arbitrators initially responded to Judge Wolf's inquiry, on December 1, 1983, that although they could have decided the issue of the identity of the parties to the contract since such a matter "arose out of the contract" and "certainly [is a] proper matter for arbitration," they had not decided it because neither party had raised the question.

On January 6, 1984, Judge Wolf directed the arbitrators to decide the identity of the respondent. On January 12, 1984, the arbitrators responded that the demand was filed against Nocera personally; they accordingly had adjudged Nocera personally liable; and since Nocera had raised no objection to the demand to the extent that it sought to hold him liable as a party to the contract, he had waived the objection and should no longer be permitted to raise it.

Judge Wolf disagreed with the arbitrators, and in an Opinion and Order dated March 12, 1984, he found that (1) the caption of the arbitration award was "irrelevant"; (2) Nocera was not on notice that he was a party to the arbitration; (3) Nocera's objections to the award were timely because the motion to vacate filed with the arbitrators tolled the running of the 90-day statute of limitations for Superior Court motions to vacate; (4) Nocera had signed the contract with Jaffe as an agent for Columbine and Papermill, and accordingly, could not be held personally liable for the debt. For the reasons set forth below, this ruling was erroneous.

## II

By captioning the respondent in his demand for arbitration as "Ronald Mickey Nocera d/b/a [corporate entities]," Jaffe put Nocera on notice that he interpreted the contract to include Nocera individually as a party, and that he intended to attempt to hold Nocera personally liable for the amount owing under the contract.[2] The

---

1. There is no provision of the Arbitration Act that allows for such a remand. D.C. Code § 16–4311(c) (1981) permits the court to order a rehearing in certain limited circumstances. Even the power to order a rehearing, however, is dependent upon the timely filing of a motion to vacate the award.

2. The contract itself is ambiguous. The "owner" is first described in the contract as "Ronald Mickey Nocera, Papermill Associates," but on the signature page, the owner is listed as "Papermill Associates Limited Partnership, Columbine Ltd., General Partner, By Ronald Mickey Nocera." "No part of a document is necessarily more important than any other part thereof for the purpose of determining the parties thereto," RE-

STATEMENT (SECOND) OF AGENCY § 155 comment a (1958), and a contradictory expression "either in the body of the instrument or in the signature" creates an ambiguity as to the identity of the parties, id. § 323 comment a. The use of the word "by" on the signature page does "create an inference" that Nocera signed the contract as an agent on behalf of Papermill and Columbine, id. § 156 comment a. The absence of an office or of the word "agent" following Nocera's signature, however, together with Nocera's designation as owner on the title page of the contract, divests the word "by" of any effect that it might otherwise have had to make the signature a representative one as a matter of law. *See Chidakel v. Blonder,* 431 A.2d 594, 596 (D.C.1981) (in UCC context, corporate name followed by

corporate name following the designation d/b/a ("doing business as") is "merely descriptive" of Nocera; an individual actually doing business this way "remains one person, personally liable for all his obligations." *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1387 (D.Neb.1977), *aff'd*, 578 F.2d 721 (8th Cir.1978). Since "[t]he ordinary sense of the words" $X$, d/b/a $Y$, Inc. should "convey[ ] the message" that $X$ remains personally liable for this entity's obligations, *Southern Insurance Co. v. Consumer Insurance Agency, Inc.*, 442 F.Supp. 30, 31 (E.D.La.1977), the d/b/a designation in Jaffe's demand for arbitration put Nocera and his attorney on notice that Jaffe was requesting an arbitration of a dispute between himself and Nocera personally, pursuant to Jaffe's interpretation of the contract. *See Krawfish Kitchen Restaurant, Inc. v. Ardoin*, 396 So.2d 990, 993 (La.App.1981) (complaint filed against Lee Ardoin d/b/a R&L Asphalt Paving, Inc. "states a cause of action against Lee Ardoin" individually).

Moreover, once Nocera was served personally with a demand for arbitration that named him individually as the respondent, he became a party to the arbitration. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 34(1) & comment a (1982) (person named as party to an action who is subject to tribunal's jurisdiction, either by service of process or by voluntary submission through appearance and participation, becomes a party to the action). For in general, the parties are those who are named in the pleadings. The trial court appeared to base its determination that the caption of the demand is irrelevant on three cases: *Smith v. Bozzi*, 83 A.2d 436 (D.C.1951); *Conn v. United States*, 177 Ct.Cl. 319, 366 F.2d 1019 (1966), and *McKnight v. Blanchard*, 667 F.2d 477 (5th Cir.1982). *Smith*

and *Conn*, however, merely restate the unexceptional proposition that the trial court is not bound by the *cause of action* stated by the plaintiff in its complaint. *See* 83 A.2d at 438; 177 Ct.Cl. at 323, 366 F.2d at 1021. In *McKnight*, one ground for plaintiff's appeal was that by a clerical change in the suit's caption to "et al.," a defendant had accidentally been dropped from the suit. In this context, the court reassured the plaintiff by noting that an administrative captioning "has no effect on what cause of action and what parties are (or are not) joined in the substantive allegations of the pleadings." 667 F.2d at 482. We do not read these cases as providing authority for the trial court's holding that Nocera was not a party to the arbitration even though he was personally served with a demand for arbitration naming him as such.

 Upon receipt of a demand for arbitration evidencing Jaffe's understanding that the contract named Nocera not as an agent of Papermill, but as a party principal, Nocera had three options under the Arbitration Act. First, he could have applied to the Superior Court for a stay of arbitration and for a pre-arbitration construction of the contract; and he could not be compelled to arbitrate absent a court order to that effect. D.C. Code § 16–4302(b) (1981) provides: "On application, the Court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party." Nocera's contention that he signed the contract as an agent is essentially an argument that there was no agreement to arbitrate be-

---

word "by" without indication of office is insufficient to establish agency as matter of law); *Maine Gas & Appliances, Inc. v. Siegel*, 438 A.2d 888, 890 (Me.1981) (same). In these types of circumstances, the intent of the parties to the contract on the question of party identity normally is established through extrinsic evidence.

RESTATEMENT (SECOND) OF AGENCY, *supra* § 323(2) & comment d; *id* § 155 comment d; *id* § 323 illus. 3 (where contracting parties are described as A and T in body of instrument, but A signs contract as "A, agent for P," either A or T can introduce evidence to prove an agreement that A should or should not be a party).

tween Jaffe and Nocera in his personal capacity; this is the very type of situation which, at the pre-arbitration stage, section 16–4302(b) is designed to address. *See, e.g., Ballard & Associates v. Mangum,* 368 A.2d 548, 551 (D.C.1977) (on application to stay arbitration and to construe contract to exclude controversy from scope of arbitration clause, court must examine contract and determine whether parties have consented to arbitrate).[3]

Nocera's second alternative, once he was served with a copy of the demand, was to accede to the arbitration, but to raise the objection that there was no agreement to arbitrate at the arbitration hearing, and to thereby preserve the issue for court review.[4] D.C.Code § 16–4311(a)(5).[5] His third alternative was to frame the submission to the arbitrators to include the issue of the identity of the parties to the contract. Such an issue undoubtedly is one "relating to" the contract under the arbitration clause,[6] and the arbitrators' determination of this controversy, had it been submitted to them, would have been enforceable under the Arbitration Act. *See* D.C.Code § 16–4301 (1981) (arbitration agreement to submit to arbitration *"any* existing controversy [or] . . . *any* controversy thereafter arising" under a contract is valid [emphasis added] ); *see also Sindler v. Batleman,* 416 A.2d 238, 242–43 (D.C.1980) (parties' submission to the arbitrator may add authority to arbitrate over and above arbitration clause).[7]

**3.** Appellees are mistaken in their contention that *Ballard* stands for the proposition that even absent a pre-arbitration motion for stay or an objection to the arbitrator's jurisdiction, a court reviewing a motion to vacate may independently determine arbitrability.

**4.** This was the procedure followed both in *Davis v. Chevy Chase Fin. Ltd.,* 215 U.S.App.D.C. 117, 120, 123–24, 667 F.2d 160, 163, 166–67 (1981) (on application to vacate award, where applicant had specifically objected before arbitrator to arbitrability of dispute, objection was preserved, and issue was ripe for court review), and in *Mobil Oil Corp. v. Local 8–766, Oil, Chem. & Atomic Workers Int'l Union,* 600 F.2d 322, 323, 325 (1st Cir.1979) (same). Nocera's contention that these cases stand for the proposition that a court may review arbitrability on a motion to vacate, notwithstanding the applicant's failure to urge his objection before the arbitrator, is without merit. *See also Local 719, Am. Bakery & Confectionery Workers v. National Biscuit Co.,* 378 F.2d 918, 921 (3d Cir.1967) (arbitrability reviewable where party stated with "clarity" that its participation in arbitration "did not indicate a willingness in fact to forfeit judicial review of arbitrability"); *State v. Local 2883, Am. Fed'n of State, County & Mun. Employees,* 463 A.2d 186, 189 (R.I.1983) (objection to arbitrability preserves issue for judicial review); *Providence Teachers' Union Local 958, Am. Fed'n of Teachers v. Providence School Comm.,* 433 A.2d 202, 204 (R.I.1981) (same); *James Stewart Polshek & Assocs. v. Bergen County Iron Works,* 142 N.J. Super. 516, 522, 362 A.2d 63, 66 (Ch.1976) (same).

 The identical principle has been applied where it is contended that one of the parties named in the demand for arbitration is not a party to the underlying contract. For example, in *Verdex Steel & Constr. Co. v. Board of Supervisors,* 19 Ariz.App. 547, 550, 509 P.2d 240, 243 (1973), where one party to the arbitration proceeding had made its position "crystal clear" to the arbitrator that it believed it was not required by contract to arbitrate, the court had the power to determine the question of the identity of the parties to the underlying contract. The same result would not have obtained had this party not registered its objection. *See infra* note 11.

**5.** That section provides: "Upon application of a party, the Court shall vacate an award where . . . [t]here was no arbitration agreement . . . and the party did not participate in the arbitration hearing without raising the objection. . . ."

**6.** *See Staklinski v. Pyramid Elec. Co.,* 6 App. Div.2d 565, 567, 180 N.Y.S.2d 20, 24 (1958) (arbitration clause providing that any controversy "arising out of or relating to" the contract is arbitrable, is all-inclusive), *aff'd,* 6 N.Y.2d 159, 188 N.Y.S.2d 541, 160 N.E.2d 78 (1959).

**7.** An arbitrator may decide any issue that is presented to him without objection, notwithstanding the fact that there is no agreement to arbitrate, or that a reviewing court might view the issue as outside the scope of an existing arbitration clause. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980) ("Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance

■ Nocera, however, pursued none of these alternatives. He failed to raise an objection, either by way of an application to stay arbitration or by a specific objection [8] before the arbitrators, that although Jaffe had made him a party to the arbitration, he was not a party to the underlying contract. Instead, Nocera participated in the arbitration, attending two days of hearings, testifying, and defending the case on the merits. The AAA rules provide that even if Nocera had not attended the hearing, as long as he was served with a demand for arbitration and was duly notified of the hearing date, an award could have been entered against him following a hearing ex parte. AAA Construction Industry Arbitration Rule 30. A fortiori, Nocera's participation in the hearing without raising the issue of arbitrability waived any defense to confirmation of the award against him as void on the basis of a lack of an agreement to arbitrate.[9] By his conduct, therefore,

submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute."); *Ficek v. Southern Pac. Co.,* 338 F.2d 655, 656–57 (9th Cir.1964) ("Even if the initial arbitration clause was not broad enough to include Ficek's claim, by voluntarily submitting the dispute to arbitration, Ficek and the railway 'evinc[ed] a subsequent agreement for private settlement which would cure any defect in the arbitration clause.' ... Ficek's suggestion that the subject matter 'jurisdiction' of the arbitrators could not be enlarged by the conduct of the parties misapplies the analogy—the authority of the arbitrators, unlike that of a court, was rooted in the parties' consent." [Citation omitted] ), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); *Jarrell v. Wilson Warehouse Co.,* 490 F.Supp. 412, 416–17 (M.D.La.1980) (once an issue is submitted to the arbitrators without reservation or protest, a party "may no longer take the position that it was not arbitrable.... [Such] conduct by [the party] amounts to an extension of the arbitrator's authority"); *Messina & Briante, Inc. v. Blitman Constr. Corp.,* 32 Misc.2d 21, 22, 223 N.Y.S.2d 533, 535 (1961) ("Even if the claim arbitrated did not fall within the spectrum of the arbitration clause, the respondent waived the defect by proceeding with the arbitration and participating in the hearings."), *aff'd mem.,* 19 App.Div.2d 862, 245 N.Y. S.2d 985 (1963), *app. dism'd,* 14 N.Y.2d 648, 249 N.Y.S.2d 432, 198 N.E.2d 602 (1964); *Aigen v. Giannone,* 49 App.Div.2d 562, 563, 370 N.Y.S.2d 186, 187 (1975) (by failing to raise objection, "respondent has waived any objection that the item was not within the original arbitration agreement and therefore could not be arbitrated. That which the parties agree to submit may be arbitrated even if the items thus submitted were not within the original arbitration agreement."); *Half Hollow Hills Cent. School Dist. v. Division 1181, Amalgamated Transit Union,* 60 App.Div.2d 578, 579, 400 N.Y.S.2d 102, 103 (1977) (participation in an arbitration without objection constitutes an agreement to allow the arbitrators to decide the issue submitted); *Migneault v. United Servs. Automobile Ass'n,* 21 Ariz.App. 397, 399, 400, 519 P.2d 1162, 1164–65

(1974) (even if no agreement to arbitrate, as long as party raising lack of agreement participated in arbitration of issue without objection, award will be confirmed).

**8.** The objection to arbitrability must be specific. The mere captioning of correspondence to the AAA regarding this arbitration by counsel for Nocera as "Jaffe v. Papermill" does not suffice for this purpose, nor does counsel's opening statement to the arbitrators that the case involves a claim by Jaffe against Papermill. See, for example, *Himco Sys., Inc. v. Marquette Elecs., Inc.,* 86 Ill.App.3d 476, 479, 41 Ill.Dec. 515, 518, 407 N.E.2d 1013, 1016 (1980), where the court was reviewing a petition to vacate by a losing party to the arbitration proceeding who contended that the award was invalid because the claimant, the winning party, was not a party to the underlying contract. The applicant contended that he had preserved the issue for review by attaching a copy of the contract to a pre-arbitration petition to stay arbitration, and by informing the arbitrator that he was reluctant to proceed with the hearing. The court ruled that the issue of the identity of the parties to the contract had been waived because it had not been *specifically* raised at any stage of the proceedings.

**9.** The following state cases, decided under various state versions of the Uniform Arbitration Act (adopted in the District in D.C.Code §§ 16–4301 to –4319 (1981)), hold that a failure to raise the issue of arbitrability by way of an application for stay of arbitration together with participation in the arbitration proceedings will waive the arbitrability issue and foreclose a party from raising it in a petition to vacate the award. *American Motorists Ins. Co. v. Llanes,* 396 Mich. 113, 114, 240 N.W.2d 203, 204 (1976); *Hopkins v. Auto-Owners Ins. Co.,* 41 Mich.App. 635, 637, 200 N.W.2d 784, 786 (1972); *Northwestern Sec. Ins. Co. v. Clark,* 84 Nev. 716, 448 P.2d 39, 42 (1968); *McNeal v. Black,* 61 N.C.App. 305, 307–08, 300 S.E.2d 575, 577–78 (1983); *Aster v. Jack Aloff Co.,* 190 Pa.Super. 615, 618, 155 A.2d 627, 629 (1959). For cases interpreting similar pro-

Nocera effectively consented to the scope of Jaffe's arbitral submission,[10] and waived vacatur of the award on arbitrability grounds.[11] Nocera is now foreclosed from contesting the award on the grounds that the arbitrators "exceeded their powers" under D.C. Code § 16–4311(a)(3) (1981).[12]

We agree with the trial court, however, that the caption of the demand could well have been "shrewdly chosen," and designed to confuse, and we therefore do not rely entirely upon waiver in our determination that the trial court had no power to vacate the award against Nocera personally. Instead, the facts that would allow us to find waiver—the personal service of a demand naming Nocera as the respondent, the notice of hearing, and Nocera's partic-

ipation without raising the objection—inform our discussion of the timeliness issue, upon which our decision in this case ultimately rests.

■ The D.C. Arbitration Act provides that motions to vacate arbitration awards must be filed within 90 days of the delivery of the award to the applicant. D.C. Code § 16–4311(b) (1981). The AAA served a copy of the award upon Dorothy Sellers, who had represented herself as "attorney for Papermill" in the arbitration proceeding. Given service of the original demand naming Nocera upon Nocera's attorney, Sellers' partner, together with Sellers' execution of a compensation stipulation on behalf of "Nocera/Papermill" and her efforts

visions of other state Arbitration Acts and the federal Act, see Annot., 33 A.L.R.3d 1242 (1970 & Supp.1984) § 3.

**10.** *See Coventry Teachers' Alliance v. Coventry School Comm.,* 417 A.2d 886, 889 (R.I.1980) ("A party's willingness to arbitrate a specific issue need not be express but may be implied from the conduct of the parties."); *Ficek v. Southern Pac. Co.,* 338 F.2d 655, 656 (9th Cir.1964) (agreement to arbitrate "may be implied from the conduct of the parties"), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965).

**11.** The contention that no waiver could be effective because parol evidence would demonstrate that a party to the arbitration was not a party to the underlying contract has been rejected by all courts to consider the issue, and we reject it as well. *See Koch v. Waller & Co.,* 439 So.2d 1041, 1043–44 (Fla.App.1983) (where respondent signed contract in official capacity but demand for arbitration named him and was served upon him personally and he did not raise the issue of his status as an individual defendant, court rejects his contention that "he had no reason to suspect that the arbitration proceeding had anything to do with his personal liability" and that "the proceedings in the circuit court presented the first opportunity to raise the defense of a lack of personal liability," holding that he is now "foreclosed from contesting personal liability"); *Ramonas v. Kerelis,* 102 Ill.App.2d 262, 273, 243 N.E.2d 711, 717 (1968) (where party to arbitration refused to appear and later moved to vacate award against him on grounds that he was not a party to the underlying contract, held that the "defense that he did not sign the contract nor was a party to the contract was lost due to a situation of his own creation"); *Boyte v. Dickson,* 62 N.C.App. 682, 686–87, 303 S.E.2d 418, 420–21 (where, in consolidated proceedings on two separate

claims by single claimant against respondents in both individual and corporate capacity, arbitrator returned award on both claims against respondents only in individual capacity, held that since respondents "participated, without objection as to their status as parties, in the proceedings," the trial court was correct in refusing to vacate the award on the grounds that there was no agreement between claimant and respondents in their *personal* capacities to arbitrate the claim against respondents' corporation), *app. dism'd,* 309 N.C. 461, 307 S.E.2d 362 (1983); *Himco Sys., Inc. v. Marquette Elecs., Inc.,* 86 Ill.App.3d 476, 479, 41 Ill.Dec. 515, 518, 407 N.E.2d 1013, 1016 (1980); *Verdex Steel & Constr. Co. v. Board of Supervisors,* 19 Ariz.App. 547, 550, 509 P.2d 240, 243 (1973) ("one who is not bound by contract to arbitrate and who voluntarily participates in an arbitration proceeding without making a clear record of non-participation in the binding effects of the arbitration, is bound by the award to the same extent and under the same conditions as a party to a written agreement to arbitrate").

**12.** *See Rochester City School Dist. v. Rochester Teachers Ass'n,* 41 N.Y.2d 578, 583, 394 N.Y.S.2d 179, 182, 362 N.E.2d 977, 981 (1977) ("A party who has participated in arbitration cannot later seek to vacate the award on the ground that the controversy was not arbitrable. By statute that question must be raised before arbitration, and if it is not it is deemed to be waived. Obviously a party may not avoid this restriction by later arguing that the award should be vacated on the ground that the arbitrator 'exceeded his power' ... [or] that the arbitrator lacked the power to resolve the question submitted." [Citations omitted] ); *Coventry Teachers' Alliance v. Coventry School Comm.,* 417 A.2d 886, 889 (R.I.1980).

subsequent to the award on behalf of Nocera before both the arbitration tribunal and the Superior Court, we have no difficulty finding that service of the award on Sellers started the running of the 90-day statute of limitations. Sellers has filed an affidavit stating: "I did not understand that Nocera was a party to the arbitration proceeding." Nevertheless, she discovered that Jaffe intended to enforce the award against Nocera personally six weeks before the statute expired; yet she filed no motion to vacate within this period of time. The informal notice of Jaffe's intent conveyed by Jaffe's attorney to Sellers on December 7, 1982 was confirmed by the formal petition to confirm the award naming Nocera in a personal capacity, filed January 5, 1983. Following receipt of this petition, no action was taken to vacate the award within the two weeks remaining of the 90-day limitations period. Under these circumstances, any defense of lack of personal responsibility under the contract that could survive the waiver analysis set forth above, should not have been entertained by the Superior Court at a time beyond the statutory 90-day period.[13]

■ Nocera maintains that the timely petition for reconsideration that was filed with the arbitrators within 20 days of the award, *see* D.C. Code § 16–4309 (1981), tolled the 90-day statute of limitations for Superior Court motions to vacate. This contention is unavailing for several reasons. Even if we were to interpret the Arbitration Act to permit section 4309 applications to toll the running of the 90-day period for motions to vacate[14]—a question we do not decide—no tolling would be available here in any event. First, the ground that Nocera urges for vacation of the award—his lack of personal responsibility under the contract—was not asserted in the petition filed with the arbitrators. Allowing tolling in this case would therefore advance none of the policy considerations that support tolling: conserving judicial resources by allowing the nonjudicial forum an opportunity to correct its own errors and to reach a final decision prior to judicial review; conserving judicial and non-judicial resources by preventing the simultaneous consideration of the same issues by both the court and the arbitrators; and refraining from forcing a party to apply to the court perhaps needlessly during the pendency of the application before the arbitrators, in order to preserve his right to judicial review. *Konicki, supra* note 14, 441 N.E.2d at 1336–37.

■ Moreover, even if we were to permit tolling in these circumstances, the application to vacate on the ground of lack of personal liability (entitled "Motion to Dis-

---

**13.** The assertion that *defenses* may be raised in response to a petition to confirm an award, even if that petition is filed after the 90-day period for the filing of motions to vacate has expired, is without merit. See the following cases interpreting the Uniform Arbitration Act (adopted in the District in the D.C. Arbitration Act): *Bloom v. Landy*, 72 Ill.App.3d 383, 394, 27 Ill.Dec. 878, 887, 389 N.E.2d 1286, 1295 (1979); *School City of East Chicago v. East Chicago Fed'n of Teachers, Local 511*, 422 N.E.2d 656, 659–61 (Ind.App.1981); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir.1980) (construing Indiana law), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981); *Bernstein v. Gramercy Mills, Inc.*, 16 Mass.App. 403, 406–408, 452 N.E.2d 231, 234–35 (1983); *Component Sys., Inc. v. Murray Enters. of Minn., Inc.*, 300 Minn. 21, 24, 217 N.W.2d 514, 516 (1974); *Emporium Area Joint School Auth. v. Anundson Constr. & Bldg. Supply Co.*, 402 Pa. 81, 83–84, 166 A.2d 269, 270–71 (1960); *T&M Properties v. ZVFK Architects & Planners*, 661 P.2d 1040, 1043 (Wyo.1983). *See also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 174–75 (2d Cir.1984) (federal Arbitration Act).

**14.** *Compare Konicki v. Oak Brook Racquet Club, Inc.*, 110 Ill.App.3d 217, 219–22, 65 Ill.Dec. 819, 821–23, 441 N.E.2d 1333, 1335–37 (1982) (tolling prevents "duplicative and inexpeditious use of the judicial and arbitration system" and should be permitted) *with Lopez & Roque Tile Co. v. Clearwater Dev. Corp.*, 291 So.2d 126, 128 (Fla. App.1974) (no tolling permitted); *Cutler Assocs. v. Merrill Trust Co.*, 395 A.2d 453, 456 n.4 (Me. 1978) (same; dictum); *Trustees of Boston & Maine Corp. v. Massachusetts Bay Transp. Auth.*, 363 Mass. 386, 394, 294 N.E.2d 340, 346 (1973) (same; dictum). Our opinion in *Tung v. W.T. Cabe & Co.*, 492, A.2d 267 (D.C.1985) does not decide this issue; *see id.*, at 269 n.3.

miss"), was not filed within 90 days of the arbitrators' decision on the section 4309 petition. *See* D.C. Code § 16–4311(b) (1981). In fact, that application was not filed until September of 1983, over nine months after the arbitrators had dismissed the application to modify the award. No defense that Nocera cannot be held personally liable is asserted in the January 20, 1983, response to Jaffe's petition to confirm the award. The vague assertions that the arbitrators had "exceeded their powers" and that the Superior Court lacked "personal and subject matter jurisdiction over Nocera" set forth as defenses in this response, without any supporting memorandum of law to explain what is meant by these generalizations, are insufficient to qualify as objections to the award on personal liability grounds. The September, 1983, motion to dismiss based on lack of personal liability was untimely and should not have been considered by the trial court.

### III

■ The arbitrators awarded $76,103.71 to Jaffe, and required him in return to deliver items in his possession listed in a schedule A, attached to the award. The arbitrators provided that if any of the 28 items listed in schedule A are not delivered by Jaffe, Nocera may deduct the value of the items not delivered from the $76,103.71 owed. The total value of the items listed in schedule A, however, is $75,856.85. The trial court determined that the parties had agreed to modify the amount of the award by consent to $75,856.85. Both parties agree that there was no such consent. In addition, the petition to confirm requested interest on the award, and the trial court did not rule on this request. Accordingly, we reverse the trial court's order to the extent that it vacated the arbitrators' award against Nocera in his personal capacity, and we remand to the trial court for the reinstatement of the award, for additional factfinding on the question of the discrepancy between the face amount of the award and the total value of the items listed in schedule A, and for a determination of the interest owing to appellant, if any, on the award.

*So ordered.*