DENNIS E. BOLDING AND DIXIE R. BOLDING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bolding v. Commissioner
Docket No. 23171-93
United States Tax Court
T.C. Memo 1995-326; 1995 Tax Ct. Memo LEXIS 327; 70 T.C.M. (CCH) 110; July 20, 1995, Filed *327 Decision will be entered under Rule 155. Farley Price Katz, for petitioners. Derek B. Matta, for respondent. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years and in the amounts as follows: Year
Deficiency
1988
$ 18,317  1989
413  1990
5,299  All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. At the time of filing their petition herein, petitioners were residents of Lampasas, Texas. They filed joint income tax returns for the years in question. After the settlement of other disputes between the parties, it remains for the Court to decide whether petitioners had a sufficient basis in their stock in Three Forks Land & Cattle Co., an S corporation (hereinafter the corporation), in 1990 so that they could deduct the net operating loss suffered by the corporation in that year. This requires us to make three determinations: (1) Whether petitioner Dennis Bolding [1] or the corporation was the borrower of approximately *328 $ 250,000 in 1990; (2) if petitioner was the borrower, whether he thereafter loaned to or invested the loan proceeds in the corporation; and (3) whether petitioner made any other loans to or investments in the corporation. FINDINGS OF FACT Petitioner is a native of CentralTexas. Petitioner's father was a rancher, and petitioner grew up and worked on a ranch. After graduating from high school, petitioner was engaged in various businesses and enterprises, including working in an oil field, acting as a general contractor, engaging in the real estate business, and operating an automobile and tractor distributorship and a beer distributorship in the Central Texas area at one time or another after 1957. In the late 1970s, petitioner began a cattle ranch operation, raising and selling cattle for the market. At various times, petitioner also has engaged in a breeding cattle operation, which involves a higher quality of cattle than a commercial cattle *329 operation. In August 1983, petitioner set up Three Forks Land & Cattle Co. on the advice of his accountant. The corporation was organized as an S corporation, and at all times has been wholly owned by petitioner, with outstanding capital stock of $ 1,000. It has always been engaged in either the commercial cattle business or the registered cattle business. Prior to 1990, petitioner had allegedly lent considerable amounts of money to the corporation. He testified that he obtained such funds from the sale of his prior business interests, such as his beer distributorship and a ranch. Such advances in prior years were recorded in the corporation's books and records as loans from a shareholder. No written notes for such loans, however, were prepared or executed. Respondent has raised a question as to the validity of these debts. At the beginning of 1990, petitioner needed additional funds with which to purchase cattle to stock his ranching operation. He contacted the Citizens State Bank of Lometa at Lometa, Texas (hereinafter the bank), and explained that he wanted a loan and the purpose for obtaining the money. The bank asked petitioner to submit a personal financial statement and *330 a proposed operating statement showing the planned use of the funds. Petitioner accordingly submitted his personal financial statement and a proposed operating statement in which he explained the need for and his proposed use of the funds. He asked for a line of credit from the bank in the amount of $ 250,000. No financial information with respect to the corporation was asked for or submitted. The bank approved the proposed line of credit in the amount of $ 250,000. A note and security agreement were accordingly made out in the name of "Dennis E. Bolding d/b/a/ Three Forks Land & Cattle Co." Petitioner signed the obligation in the above style, and using his individual Social Security number. The bank also required the filing of a Security Agreement and a UCC-1 financing statement, which petitioner signed again as "Dennis E. Bolding d/b/a/ Three Forks Land & Cattle Co." In borrowing the above money, petitioner believed and intended that he was the sole personal borrower. In lending the money, the bank indicated that it was making the loan to petitioner alone and based upon his personal credit. None of the loan documents prepared by the bank were prepared for the corporation as debtor, *331 nor were they signed by anyone on behalf of the corporation. [2]
After arrangements for the line of credit were concluded, advances were made on it from time to time. The funds were disbursed sometimes directly from the bank to the corporation at petitioner's direction, sometimes to petitioner's personal account; the funds were used at least in part to purchase cattle by the corporation. Principal and interest payments were made to the bank from time to time with respect to the $ 250,000 line of credit. Such principal and interest payments to the bank were sometimes made by check drawn on the corporation's bank account. At the end of the year 1990, the total amount outstanding on the line of credit, net *332 of all repayments, was $ 223,000. The line of credit was rolled over into later years, after its initial maturity, but ultimately went into default in March 1994, with an outstanding balance. The bank took action against petitioner with respect to the outstanding balance of the loan, but it is not shown that action was taken against the corporation. The corporation reported an ordinary loss for its 1990 year in the amount of $ 93,769. Petitioner deducted that amount, inter alia, on his income tax return for 1990 as his share of the S corporation's loss. In addition, petitioner deducted a carryover loss from the 1989 tax return in the amount of $ 25,454, for a total loss of $ 119,223. After reporting a capital gain of $ 19,681 from the corporation in the 1990 tax return, the net loss from the corporation claimed in the 1990 tax return of petitioner was $ 99,542. The corporation's loss deducted on petitioner's 1990 tax return created a net operating loss for that year and a carryback to the 1988 year in the amount of $ 62,170. Petitioner claimed an additional net operating loss carryback to 1988 from 1989 in the amount of $ 15,344. In her statutory notice of deficiency, respondent *333 disallowed the entire $ 99,542 net loss claim for 1990 on the grounds that petitioner had insufficient basis in the corporation's stock to support such an allowance. Respondent also reduced the net operating loss carrybacks claimed to petitioner's 1988 tax return in the aggregate amount of $ 64,136. Only the deductibility of the 1990 loss is contested here by petitioner. The amount of said loss, as reported, does not appear to be in dispute. OPINION 1. Who Borrowed the Money? As noted at the beginning of this opinion, the first question we need to decide is who the borrower was with respect to the $ 250,000 line of credit that was extended by the Citizens State Bank of Lometa. Petitioner contends that it was himself individually, whereas it is respondent's position that the borrower was Three Forks Land & Cattle Co., represented by "Dennis E. Bolding, d/b/a Three Forks Land & Cattle Co.". The record herein shows that arrangements for this loan, or line of credit, were made by petitioner himself, and the paperwork and associated debt instrument entered into was done by petitioner "d/b/a Three Forks Land & Cattle Co." (meaning that petitioner was doing business as the Three *334 Forks Land & Cattle Co.). No conclusion is to be drawn that petitioner was purporting to act on behalf of the corporation in this matter. He signed the obligation only as an individual, and throughout the negotiations leading up to the extension of the line of credit, no financial information or commitment from the corporation was asked for by the bank. The designation "d/b/a" is merely descriptive of a person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business or incurring the obligation. Duval v. Midwest Auto City, Inc., 425 F. Supp. 1381, 1387 (D. Neb. 1977), affd. 578 F.2d 721 (8th Cir. 1978); see also Jaffe v. Nocera, 493 A.2d 1003, 1007 (D.C. 1985). From the evidence that has been presented in this case, we are satisfied that the true obligor with regard to the extension of this line of credit from the Citizens State Bank was petitioner individually and not the Three Forks Land & Cattle Co., of which he was the president and sole shareholder. 2. Was the Money Loaned to or Invested *335 in the Corporation? Under section 1366(a), a shareholder of an S corporation is entitled to deduct his pro rata share of the corporation's loss. In this case, it appears to be undisputed that Three Forks Land & Cattle Co. was an S corporation, and that petitioner was its sole shareholder. The aggregate amount of loss and deductions taken into account, however, is limited to the sum of the shareholder's adjusted basis in his S corporation stock and the adjusted basis of any indebtedness of the S corporation to the shareholder. Sec. 1366(d)(1). The record is not clear as to the status of the line of credit involved here as of the end of 1990. Petitioner testified generally that he carried the outstanding amounts owing upon the line of credit on the corporation's books in the general category of "loans from shareholders", but that, as the end of 1990 approached, he transferred those amounts from such liability account to a contribution to capital surplus, based on the advice of his accountant, who opined that the corporation would not be able in the foreseeable future to repay its indebtedness to petitioner, as shown by the balance sheet. Accordingly, says petitioner, the debt of *336 the corporation to him was converted into an investment in the corporation and increased his basis in his corporate stock by the amount of such contributions to capital surplus, under section 1366(d)(1)(A). The problem here is that this position is belied by the clear testimony received at trial. When petitioner, on the witness stand, was asked about this transaction, he testified as follows: Q. I would like you to go back now and look at Exhibit 21-U, which is the 1990 corporate tax return and again look at the balance sheet. Have you found it? A. Yes sir. Q. Can you show -- does this $ 250,000 loan [the line of credit obligation] appear on that balance sheet? A. Yes sir. Q. Can you tell us where? A. On line 19, loans from Stockholders. Over at the end of the year it shows $ 310,122. Q. And is the $ 250,000 included in that? A. Yes sir.
In other words, petitioner testified that the balance owing on the line of credit, in the amount of $ 223,000, was not transferred on the corporate balance sheet from a debt owing from the corporation to petitioner into a contribution to capital surplus. Since there was no increase in the authorized capital stock outstanding, *337 which remained at $ 1,000, the conclusion is inescapable that petitioner admitted in open court that he did not make such an additional investment in the Three Forks Land & Cattle Co.
If this line of credit balance did not represent an investment in the company as an informal contribution to capital surplus, then was it still contained in the balance owing to shareholders December 31, 1990, which the corporate books showed to be $ 310,122? The amount on the balance sheet is large enough to support such an obligation, but we cannot tell whether this liability was part of that larger balance. The record in this case does not show any promissory notes, book entries, or any other evidence which would indicate a decision by petitioner to loan any such amount of money to the corporation. All we have is petitioner's rather general and vague testimony to this effect, with the observation that this was an unnecessary bookkeeping complication and had no tax effects anyway, since any interest which he received from the corporation was immediately turned over to the bank as payment of interest on the loan in the same amount. We can appreciate that transactions between a shareholder and his *338 wholly owned S corporation may frequently be informal and the details may be short circuited. We have pointed out that closely held corporations cannot be held to the same strict formalities as large public corporations on nonessential matters. See John P. Scripps Newspapers v. Commissioner, 44 T.C. 453, 469 (1965). Nevertheless, there must be some bona fide evidence that petitioner truly loaned the money to his S corporation, with the result that his basis in the corporate stock would be thereby increased under section 1366(d)(1)(B). The burden to satisfy us that a true loan actually took place here is upon petitioner, Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). In this, petitioner has failed to carry his necessary burden of proof. We are not prepared to find and hold on the basis of the present record that petitioner either made an additional investment in the stock of the Three Forks Land & Cattle Co., or loaned additional money to the corporation in 1990, from the proceeds of his line of credit at the bank, so as to increase his basis in the S corporation under section 1366(d), which would allow him to claim *339 the 1990 losses of the corporation in his personal return. Something more than his rather casual testimony to this effect is required. 3. Other Loans to or Investments in the Corporation
Having addressed the defects in proof here with respect to the status of the line of credit from the bank to petitioner, we must now mention the possibility that additional basis in petitioner's investment in the corporation may have existed from some other source in 1990. The corporate balance sheet that was in evidence indeed showed that at the beginning of 1990 loans to shareholders in the amount of some $ 495,000 was shown, which was reduced to $ 310,122 by the end of the year. Likewise, at the beginning of 1990, a capital surplus of $ 16,150 was shown which, by the end of 1990, had ballooned to $ 525,150. As to the "loans from shareholders", petitioner casually testified that this amount represented funds that he had loaned to the corporation from the proceeds of his prior sales of his beer business and a ranch. He admitted that no promissory notes were executed, and there is no evidence in the record of any other sort that would show such funds coming into the corporation as a loan from *340 petitioner, the sole shareholder. Likewise, the source of the capital contributions at the beginning of 1990, and the very large balance to which such account ballooned by the end of the year, is totally unexplained. It is true that the corporate balance sheet for 1990 was received in evidence, but no other explanation of the items therein was provided, and we are left uninformed as to the source of the funds going into the corporation, as well as the manner in which such funds came in; i.e., as loans or as investments. These items are important in the context of the present question, but the record does not help us. The balance sheet in question was part of the corporation's 1990 income tax return, but such tax return, although received in evidence, is not self-proving, and we think it was incumbent upon petitioner, as the corporation's sole shareholder, to prove the adjusted basis of his stock in the corporation, as well as the amounts of the loans he had made to the corporation that were outstanding at the end of 1990, so as to entitle him to the loss deductions of the corporation that he claimed for that year. See Halle v. Commissioner, 7 T.C. 245 (1946), *341 affd. 175 F.2d 500 (2d Cir. 1949); Steffens v. Commissioner, T.C. Memo. 1981-637 n. 13, revd. on other issues 707 F.2d 478 (11th Cir. 1983). Given the inadequate record that is presented here, we must uphold respondent's determination. Decision will be entered under Rule 155. Footnotes
1. Hereinafter, all references to petitioner are to Dennis E. Bolding.↩
2. Several further notes were also signed by petitioner individually, but on July 13 and Aug. 8, 1990, petitioner signed promissory notes both individually and as president of Three Forks Land & Cattle Co. However, these last mentioned loans were apparently not part of the line of credit allowances referred to above.↩