John E. WILLIAMS, Appellant,

v.

Agnes M. RICHEY, et al., Appellees.

No. 03–CV–1099.

District of Columbia Court of Appeals.

Argued Jan. 31, 2006.

Decided May 29, 2008.

---

John E. Williams, pro se.

Jay P. Holland, Greenbelt, MD, for appellees.

Before FARRELL and FISHER, Associate Judges, and PRYOR, Senior Judge.

FISHER, Associate Judge:

This protracted litigation relates to the winding up of a general partnership that was formed in 1984. Its sole asset—a residential property—has been sold, and

the proceeds of that sale have been placed in escrow. The issue which divides the parties is how to distribute that money, which amounted to approximately $270,000 in September of 2002. It seems likely that the entire sum will have been dissipated by attorneys' and accountants' fees before this litigation ends.

At an earlier stage of this dispute, the parties had agreed to binding arbitration. In an award dated December 7, 1999, the arbitrator ordered that certain amounts "be added to the partnership accounts of plaintiffs Forsberg and Richey." The sum of $78.22 was to be added "to plaintiff Forsberg's partnership account for a payment made on behalf of the Partnership in response to a delinquent real property tax notice from the District of Columbia." Plaintiff Forsberg was also entitled to $2,310.00 "for payments made to Mr. B.G. Tosi for performing necessary repairs to the Partnership property." The arbitrator ordered that $810.00 be added "to plaintiff Richey's partnership account for payments made to Mr. B.G. Tosi for necessary repairs to the Partnership property."

Because the parties later disagreed about what had been determined in the arbitration, the court sought clarification, posing two questions to the arbitrator:

1. In the arbitration, you ordered certain adjustments to the parties' capital accounts. In ordering those adjustments, did you adjudicate the capital accounts, and did you accept the accounting presented by Mr. Murphy as a proper accounting of the capital accounts?

2. Did you decide whether the plaintiffs were entitled to have their attorneys' fees and expenses paid by Mr. Williams or from his share of the Partnership?

The court emphasized: "In remanding this matter to you for clarification, I am in no way reopening the arbitration proceedings." We discuss the arbitrator's replies in later sections of this opinion.

On August 19, 2003, the Superior Court filed an order granting the plaintiffs' (appellees') petition for distribution of proceeds. The court ordered that "[t]he Partnership funds that currently are being held in escrow shall be distributed in accordance with the parties' capital accounts, as determined in the binding arbitration. The accounting fees of Murphy & Murphy, CPA, LLC shall be considered liabilities of the Partnership." The court also awarded to the plaintiffs attorneys' fees and expenses in the amount of $98,160.98, "to be paid to counsel for the plaintiffs from [Mr. Williams'] share of the Partnership." After a motion for reconsideration was denied, this appeal followed. We affirm in part, reverse in part, and remand for further proceedings.

## I. The Remand to the Arbitrator

We are not persuaded by appellant's argument that the trial court lacked authority to seek clarification from the arbitrator. The court's instructions made clear that it was "in no way reopening the arbitration proceedings." Rather, the court sought to clarify the award it was being asked to enforce. When the arbitrator ordered adjustments to partnership accounts, he might simply have been ruling that plaintiffs Forsberg and Richey were entitled to be reimbursed for payments they had made on behalf of the partnership. He might also have gone further and ruled, essentially, that the capital accounts would be accurate once these adjustments had been made—in other words, he might have adjudicated the capital accounts. The arbitrator's response clarified that he had done the latter, "accept[ing] the accounting presented by Mr. Murphy

as a proper accounting of the capital accounts."

■ There is ample authority for seeking a clarification (as opposed to a reopening) of an arbitrator's award. *See, e.g., U.S. Energy Corp. v. Nukem, Inc.,* 400 F.3d 822, 831 (10th Cir.2005) ("When there is more than one reasonable interpretation of an arbitration award, a remand for clarification is appropriate."); *Hyle v. Doctor's Assocs., Inc.,* 198 F.3d 368, 370 (2d Cir.1999) ("[A] district court can remand an award to the arbitrator for clarification where an award is ambiguous."); *Colonial Penn Insurance Co. v. Omaha Indemnity Co.,* 943 F.2d 327, 334 (3rd Cir.1991) ("Because of the limited purpose of [a remand for clarification] ..., there is not even a theoretical inconsistency with the *functus officio* doctrine."); *American Postal Workers Union, AFL–CIO v. United States Postal Service,* 254 F.Supp.2d 12, 15 (D.D.C.2003) ("Because of a remand's limited purpose, remand to clarify an ambiguity does not run afoul of the common-law doctrine of *functus officio.*") (footnote omitted).[1] Contrary to appellant's suggestion, this authority is not limited to cases involving the federal law of labor arbitration contracts.

*Jaffe v. Nocera,* 493 A.2d 1003 (D.C. 1985), does not hold that the Superior Court lacked the authority to remand for clarification.[2] In *Jaffe,* the arbitrators had entered an award against "Ronald Mickey Nocera d/b/a Papermill Associates, and Columbine, Ltd., General Partner...." When it became clear that Mr. Jaffe intended to enforce the award against Nocera in his personal capacity, the Superior Court remanded the case to the arbitrators for clarification of the identity of the respondent. The arbitrators replied that they had not decided that question because neither party had raised it. *Id.* at 1007. The court then directed the arbitrators to decide the matter. They responded that the demand was filed against Nocera personally and that they accordingly had adjudged him personally liable. The Superior Court disagreed with the arbitrators, concluding that Nocera did not have notice that he was a party to the arbitration and could not be held personally liable.

We reversed, concluding "that the trial court had no power to vacate the award against Nocera personally." *Id.* at 1011. Nevertheless, we did comment on the court's remand for clarification. When reciting the procedural history of the case, we dropped a footnote explaining that

> There is no provision of the Arbitration Act that allows for such a remand. D.C.Code § 16–4311(c) (1981) permits the court to order a rehearing in certain limited circumstances. Even the power

---

1. The Latin phrase *functus officio* refers to an officer or official body "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." BLACK'S LAW DICTIONARY 696 (8th ed.2004). In this context, the *functus officio* doctrine holds that "once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration." *Washington–Baltimore Newspaper Guild, Local 35 v. The Washington Post Co.,* 143 U.S.App. D.C. 210, 214, 442 F.2d 1234, 1238 (1971) (internal quotation marks and citation omitted). As the cases cited above illustrate, "the present case falls within the 'clarification-completion' exception to the *functus officio* doctrine, which allows arbitrators to clarify an award already made." *CUNA Mutual Insurance Society v. Office and Professional Employees International Union, Local 39,* 443 F.3d 556, 565 (7th Cir.2006).

2. Nor is this a case where the trial court exceeded its authority by vacating or modifying an award. *See Lopata v. Coyne,* 735 A.2d 931 (D.C.1999); *Siddiq v. Ostheimer,* 718 A.2d 145, 147 (D.C.1998).

to order a rehearing, however, is dependent upon the timely filing of a motion to vacate the award.

493 A.2d at 1007 n. 1. This comment was not a part of our holding, and in the present case the trial court was careful not to order a rehearing. Moreover, there is no inconsistency between our footnote in *Jaffe* and the holdings of the cases cited above, which do not rely upon statutory authority, but rather upon common-law doctrine. It was appropriate for the trial court to seek clarification of the arbitrator's award.

## II. The Partners' Capital Accounts

■ We face two significant problems in conducting our review. Although the arbitrator ordered adjustments to the parties' capital accounts, his award does not reveal the resulting balances. Moreover, the sale of the property and other significant accounting events have occurred since the arbitration ended in December 1999. Therefore, judicial fact-finding will be necessary to determine the amounts to be distributed to each partner.

As noted above, the Superior Court inquired of the arbitrator: "In ordering those adjustments, did you adjudicate the capital accounts, and did you accept the accounting presented by Mr. Murphy as a proper accounting of the capital accounts?" The arbitrator replied, in a letter dated February 5, 2003, that "[i]n ordering adjustments to the partners' capital accounts, I accepted the accounting presented by Mr. Murphy as a proper accounting of the capital accounts." The parties have informed us that the referenced report by Mr. Murphy calculated the amounts in the capital accounts as of May 16, 1999.[3] However, that accounting is not included in the record, nor was a copy presented to the Superior Court.

The petition for distribution of proceeds filed by Mrs. Richey and Mr. Forsberg sought "an Order directing disbursement according to the attached proposed disbursement schedule." The attached exhibit reflects calculations (also made by Mr. Murphy) as of March 2002, long after the arbitration had ended. It shows balances in the partners' capital accounts beginning January 1, 2001, but it does not show how those amounts were derived from any balances as of May 16, 1999, that the arbitrator accepted. The arbitrator obviously did not approve this particular accounting by Mr. Murphy, because it was created, and it reflected events that occurred, years after the arbitration had ended.

Resolving this litigation is not simply a matter of distributing the amount in escrow on a *pro rata* basis in proportion to the partners' percentage interests in the partnership. The Partnership Agreement provides that the net proceeds "shall be distributed to the partners in accordance with their capital accounts." "Capital account" is defined in the Partnership Agreement. As the trial court recognized, a capital account is not the same thing as a partnership interest.

Mr. Williams argued below and reiterates here that the Murphy accounting submitted in 1999 is simply wrong. We agree with the trial court, however, that Mr. Williams may not relitigate matters already resolved in the arbitration. The arbitration was confirmed without objection, and the court entered a Binding Arbitration Award. Nevertheless, we disagree with the court's statement that, "[g]iven that the accounting of the parties' interests in the Partnership was addressed and decided in the arbitration and that the Arbitrator accepted the accounting presented by Mr. Murphy as a proper accounting of

**3.** Mr. Williams vigorously disputes the accu-    racy of that accounting.

the capital accounts, there is no basis for this Court to consider that issue further."[4]

As previously noted, we do not have a copy of the Murphy accounting prepared in 1999, and we understand that the trial court did not either. The arbitrator has clarified that he accepted the Murphy accounting, but it remains to be demonstrated that Mr. Murphy calculated those balances. If a properly authenticated copy of the accounting that was accepted by the arbitrator is presented on remand, and if that document in fact reveals the balances in the capital accounts in 1999,[5] then there is no basis for the trial court to consider *that* issue further. If, however, the Murphy accounting does not reveal those balances, the trial court will have to determine what they were.

Determining how the capital accounts stood in 1999 does not end the inquiry, however. Before a distribution may be accomplished, the capital accounts must be brought up to date. To be sure, appellees have submitted a second accounting by Mr. Murphy, calculated as of March 2002, but Mr. Williams disputes the appellees' "accounting of the capital accounts since the arbitration." And, as the trial court recognized, "clearly the Arbitrator didn't decide the issues that happened after the arbitration." More importantly for present purposes, the trial court did not do so either. We therefore reverse and remand for the trial court to determine the capital accounts of the partners at the present time.

### III. Accountants' Fees

■ The amount remaining to be distributed among the partners will, of course, be affected by fees and expenses the partnership must first pay to lawyers and accountants. We refer the parties to the trial court's discussion of accountants' fees at pages 5 and 6 of its order. Although it may be more accurate to say that "the [supplemental accounting] report by Mr. Murphy was prepared, at the Arbitrator's direction, for the Partnership," his entire 1999 report "was accepted by the Arbitrator as a proper accounting and used to adjudicate the capital accounts." We affirm the trial court's holding that "it ... is appropriate for [the cost of preparing that accounting] to be considered a Partnership liability." We affirm, as well, the trial court's determination that "the Reznick [accounting] report plainly was prepared for Mr. Williams for (belated) litigation purposes, and not for the Partnership." Therefore, the cost of that accounting shall not be treated as a liability of the partnership. Both rulings are supported by the record, and we discern no error of law or abuse of discretion. *See* D.C.Code § 17–305(a) (2001).

### IV. Attorneys' Fees

■ Based on documentation presented by appellees' attorneys, the trial court awarded attorneys' fees and expenses to be paid from Mr. Williams' share of the partnership. For reasons we will explain below, we reverse the present award, which is not supported by the record.

At appellees' urging, the trial court relied upon Article 18.A. of the Partnership Agreement, which provides:

4. In their brief appellees argue that it was proper for the trial court to order distribution according to a "formula" established in the binding arbitration. However, no such "formula" can be found in the arbitrator's award, nor does it appear in the trial court's order.

5. If that document shows the amounts in the capital accounts before the adjustments ordered by the arbitrator, it will be a simple matter of arithmetic to determine the correct balances as of May 16, 1999.

Unless otherwise so provided in this Agreement, no partner shall be liable to any other partner or to the partnership by reason of his actions in connection with the partnership, except in the case of actual fraud, gross negligence or dishonest conduct.

We do not construe this provision as authorizing an award of attorneys' fees, however. (It certainly does not do so expressly.) This sentence is, rather, an agreed-upon immunity from liability which is forfeited under the conditions described. Even if that immunity has been forfeited here (a question we do not determine), the authority to award attorneys' fees would have to be found in some other source.

Appellees misplace their reliance upon *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 720 A.2d 912 (1998). In that case the Court of Appeals of Maryland held that the prevailing party in an arbitration proceeding could recover attorney fees "when the losing party's unjustified refusal to comply with the award requires the prevailing party to institute and successfully prosecute an action in order to confirm and enforce the arbitration award." *Id.* at 919. Here, however, the trial court awarded fees "through September 1999, which the Court [found] to be reasonable." If Mr. Williams is guilty of an obstreperous and unjustified refusal to comply with the arbitration award, that conduct occurred after the award was issued on December 7, 1999. His behavior after that date cannot justify an award of fees incurred "through September 1999." [6]

We have, of course, recognized a trial court's inherent authority to award sanctions, including counsel fees, "in appropriate circumstances for intentional abuse of the litigation process." *In re Jumper*, 909 A.2d 173, 176 (D.C.2006). However, the exercise of such authority must be based upon a finding "that a party against whom the fees are assessed has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal quotation marks and citation omitted). There are no such findings here.

■ The trial court did refer to purported findings of the arbitrator that Mr. Williams had "breached his statutory duty of care to the plaintiffs by engaging in conduct that was fraudulent, dishonest, and grossly negligent or reckless...." We have not found the terms "fraudulent" or "dishonest" in the arbitrator's award, however. Although he did find that Mr. Williams had engaged in "grossly negligent or reckless conduct," that finding was tied directly to duplicate real estate tax payments totaling less than $5,000. Those findings are not equivalent to findings of bad faith. Nor, by themselves, could they justify an award of fees and expenses totaling nearly $100,000.

At this point, moreover, the arbitrator's findings with respect to attorneys' fees are essentially irrelevant. As the arbitrator made clear, he did not award attorneys' fees because he doubted his authority to do so.[7] Accordingly, there is no arbitra-

---

**6.** Some of the documentation attached to the request for attorneys' fees appears to cover services and charges after September 13, 1999. That does not change the fact that counsel for appellees presented the request as reflecting billings "through September 13, 1999," leading the trial court to award fees "through September 1999." We decline to assume that the court would have awarded the same amount had it concluded that coun-

sel simply made a clerical error in presenting his request.

**7.** Responding to the court's second question, the arbitrator stated: "I did not expressly address that question because I was unsure whether an arbitrator had the authority to award attorneys' fees against a party or whether that power was reserved to the Court." After summarizing his findings that

tor's award of such fees for the court to enforce. Furthermore, the court may not exercise authority that the arbitrator declined to wield. If the court wishes to exercise its own authority to award fees, that decision must be based upon findings made by the court itself.

■ Although we do not preclude an award of attorneys' fees against Mr. Williams, "[a]n exercise of discretion must rest on correct legal principles ... and a discretionary decision based on an erroneous premise cannot stand." *Jumper*, 909 A.2d at 175 (internal quotation marks and citation omitted). We therefore reverse the award of attorneys' fees.

## V. Conclusion

As discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*So ordered.*

Mr. Williams "had breached his duty of care to the plaintiffs in at least four specific ways," the arbitrator explained: "It was my expectation that those findings would support an award of attorneys' fees against Mr. Williams by the Court...."